## Don Gray v. The State.

### No. 197. Decided November 30, 1910.

### Rehearing Denied March 29, 1911.

**1.—Murder—Homicide—Grade of Offense.**

The degrees of homicide are not distinct offenses but are merely grades of one common offense, to wit, homicide. Following Cornelius v. State, 54 Texas Crim. Rep., 173, and other cases.

**2.—Same—Provoking Difficulty—Insult to Female Relative.**

Where, upon trial of manslaughter, under an indictment for murder, the evidence for the defense showed that deceased had insulted defendant's wife and that the latter called upon the former for an explanation, but did not attempt to resent the insult upon first meeting deceased, but cursed him immediately thereafter for such insulting conduct, when deceased said he did not blame defendant for being angry but that he would not take any abuse from him and then turned and walked away, whereupon defendant followed him some distance and used the most violent epithets towards deceased, when the latter finally turned upon defendant with a knife to attack him, whereupon he was shot and killed by the defendant, the issue of provoking the difficulty was in the case, and the issue of insulting conduct on the part of

deceased towards defendant's wife was eliminated. Davidson, Presiding Judge, dissenting.

**3.—Same—Charge of Court—Murder—Manslaughter—Surplusage.**

Where defendant had on a previous trial been acquitted of murder of both degrees and convicted of manslaughter, and was afterwards granted a new trial and again convicted of manslaughter, receiving the maximum penalty, there was no error in the court's action during the last trial in submitting a charge on provoking the difficulty—the evidence raising that issue—and the language of the court's charge to the effect that the homicide would be manslaughter under the law can be rejected as surplusage; besides there is no constitutional inhibition against using what is ordinarily termed murder evidence to convict of manslaughter, and defendant is therefore without just cause of complaint on the ground of the court's charge on provoking the difficulty. Davidson, Presiding Judge, dissenting.

**4.—Same—Charge Favorable to Defendant—Harmless Error.**

Where, upon trial of manslaughter, the court's charge required the jury to find that defendant's intent in provoking the difficulty must have been to kill deceased or do him some serious bodily injury, when under the law it would have been manslaughter if defendant provoked the difficulty with intent only to whip deceased, the charge was more favorable to defendant and imposed a greater burden upon the State than the law required, and if error it was harmless.

**5.—Same—Charge of Court—Charge as a Whole—Words and Phrases.**

Where defendant had been previously acquitted of murder and was then tried for manslaughter, and the court upon said latter trial in defining the offense of manslaughter instructed the jury that in order to reduce a voluntary homicide to the grade of manslaughter, etc., the word "reduce" taken in connection with a subsequent portion of the court's charge submitting provoking the difficulty could not be construed as defining murder, and thus submitting the offense of murder with its elements of malice and requiring a verdict for manslaughter; such a construction would be strained and unwarranted when viewing the charge as an entirety.

**6.—Same—Charge of Court—Self-Defense—Appearance of Danger.**

Where, upon trial of manslaughter, the court submitted self-defense upon the basis of both actual and apparent danger, there was no merit in the contention that the court failed to charge on the appearance of danger.

Appeal from the District Court of Burnet. Tried below before the Hon. Clarence Martin.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Flack & Dalrymple,* and *J. H. McLean,* and *Fisher & Allison, Ike D. White,* and *T. E. Hammond,* for appellant.—On the question of provoking the difficulty: Shannon v. State, 35 Texas Crim. Rep., 2; 28 S. W. Rep., 687; Gray v. State, 114 S. W. Rep., 635; Saens v. State, 20 S. W. Rep., 737; Thornton v. State, 65 S. W. Rep., 1105; Morgan v. State, 34 Texas Crim. Rep., 222; 29 S. W. Rep., 1092; Irvine v. State, 20 Texas Crim. App., 12.

Upon question that killing would have been murder and not manslaughter: Greta v. State, 9 Texas Crim. App., 429.

As to the difference between provoking difficulty and adequate cause, and court's error in charging on provoking difficulty: Mundine v.

State, 37 Texas Crim. Rep., 5; 38 S. W. Rep., 619; Franklin v. State, 30 S. W. Rep., 232; Vann v. State, 77 S. W. Rep., 813.

Upon court's failure to explain the nature or quality of the language or acts constituting provoking the difficulty: Mundine v. State, 37 Texas Crim. Rep., 5; 38 S. W. Rep., 619; White v. State, 3 S. W. Rep., 713; Winters v. State, 37 Texas Crim. Rep., 582; 40 S. W. Rep., 303; Morgan v. State, 34 Texas Crim. Rep., 222; 29 S. W. Rep., 1092.

On the question of the court's charge on provoking the difficulty and shifting the burden of proof: Vann v. State, 77 S. W. Rep., 813; Jones v. State, 13 Texas Crim. App., 1; Dent v. State, 46 Texas Crim. Rep., 166; Shamberger v. State, 24 Texas Crim. App., 433; Dubose v. State, 10 Texas Crim. App., 230; Humphries v. State, 18 Texas Crim. App., 309.

*C. E. Lane,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is the second appeal of this case. The opinion of the court and a full statement of the facts on the first appeal will be found in the 55 Texas Crim. Rep., 91.

On the trial from which this prosecution is appealed, appellant was in the District Court of Burnet County, on June 5, 1909, found guilty of manslaughter, and his punishment assessed at confinement in the penitentiary for a period of five years. The case from its beginning has been one of the most notable and interesting that has ever been before this court, at least, since my accession to the bench. It has been the subject of repeated argument by eminent and learned counsel, and also the subject of much discussion and sharp difference between the members of this court. As the former opinion will demonstrate, Judge Brooks dissented from the judgment of the court, reversing the case, and on this appeal, our learned Presiding Judge finds himself unable to agree to the disposition which will be made of the case. On account of the retirement of Judge Brooks from the bench, and the disqualification of Judge McCord, who had prosecuted the pleas of the State on the former appeal, the case was, quite a while ago, certified to the Governor, and a request for the appointment of a suitable person to sit with us in the disposition of the case, was made. Responding to that request, the Governor last spring appointed Hon. Thomas B. Love, of Dallas, who, with the court, heard a reargument of the case at length, and it has since then received the individual attention of every member of the court, and has been the subject of careful and thorough examination in consultation. From the beginning, I have had no doubt that the judgment of conviction ought to be affirmed. An inspection of the opinion on the former appeal will disclose the fact that Judge Davidson and myself agreed that, except for the error of the court in declining to order an autopsy and an examination of the body of the deceased, which it was thought would

discover and disclose the true facts, that there has been no error committed by the trial court justifying a reversal. After the case was reversed on this ground it was retried, as I believe, in substantial, if not indeed, strict conformity to the decision of this court on the former appeal, and notwithstanding the earnest insistence of counsel to the contrary, my view has been unchanged that the record is practically without an error, and that no reason or excuse is found in it to set aside the verdict and judgment of the court below. In view of the importance, however, of the case, and out of deference and respect to the learned counsel who have, with great vigor and commendable zeal, prosecuted the appeal before this court, we feel that it should receive rather fuller treatment than any merit or difficulty in the case might ordinarily suggest.

There are in the case, two questions of substance presented in the record. The first is a question of fact, and that question is whether or not the issue of provoking the difficulty was raised by the evidence. If this should be answered in the negative, then we are all agreed that the case must and should be reversed. The majority of the court hold, as we all agreed on the former appeal, that the issue of provoking the difficulty is in the case. This was held on the former appeal. Judge Brooks, in his dissenting opinion in the case, went to the extent of holding that the facts and circumstances showed, without dissent or question, that he was guilty of provoking the difficulty, and there was virtually no dispute in the facts on this question. This, in substance, too, was the holding of the Court of Civil Appeals in his case, in that court growing out of the same facts. (117 S. W. Rep., 870). Without going into further detail on this matter, we hold that the issue of provoking the difficulty was clearly raised by the facts, and that the court did not err in submitting that question to the jury.

The next question of importance raised on the appeal, grows out of and is based on, the 13th paragraph of the court's charge. This paragraph is as follows: "You are instructed that if you find from the evidence in this case, beyond a reasonable doubt, that the defendant went to where the deceased was killed, and by his own wrongful act (if any there was), brought about the necessity of killing the deceased, Will Phillips, and that defendant provoked a difficulty with said Will Phillips, with the wrongful and wilful intention to take the life of deceased, or inflict upon him serious bodily injury, and you further find that the defendant knowingly and wilfully, and with the specific intention and with a view thereto, used toward deceased language, or did acts, or did both, for the purpose of causing deceased to attack defendant, that he might have a pretext to kill him or inflict upon deceased serious bodily injury, and you find that such language or conduct or acts, on the part of the defendant (if any such there was on the part of defendant) was reasonably calculated to bring on the difficulty, and cause the deceased to attack the defendant, and you further find

from the evidence, beyond a reasonable doubt, that the defendant, in pursuance of a wrongful, wilful and previously-formed design to provoke a difficulty with deceased for the purpose, and with the intention of killing him or inflicting upon him serious bodily injury, and you further find from the evidence, beyond a reasonable doubt, that intentionally, and with a view thereto, he shot with a pistol and thereby killed deceased, then you are instructed that the defendant's plea of self-defense will not avail him in this case, and if you so find from the evidence, beyond a reasonable doubt, the homicide would be manslaughter, under the law herein given you in this charge." Exception was taken to this paragraph of the court's charge, because (a) said charge is confusing and misleading; (b) because the jury were therein and thereby instructed that if the language used by defendant, if any, was reasonably calculated to bring on a difficulty, the defendant would forfeit his perfect right of self-defense, whether such language did or did not in fact bring on the difficulty; and (c) the appellant being on trial only for manslaughter, the language in said charge suggests to the jury that the defendant might be guilty of a higher grade of homicide, thereby causing the jury to inflict on appellant the maximum penalty for manslaughter; and (d) the jury are instructed, in effect, by said portion of said charge, that the appellant's plea of self-defense would not avail him if the jury believed that the intention of the appellant was to provoke a difficulty, and with a view thereto, he did shoot and kill the deceased, whether the appellant did or not, in fact, provoke the difficulty; and (e) the jury are in effect instructed by and in the last clause or paragraph of said charge, that if the appellant intentionally, and with a view thereto, shot and killed deceased with a pistol, his right of self-defense would be cut off. There is in the brief filed on behalf of appellant, and this was most strongly urged on argument, the further proposition that if the difficulty was provoked by appellant intentionally and deliberately, with the intention of taking the life of deceased, that his act in killing him, under the law, would be murder and not manslaughter; and the further suggestion is made that since he had been acquitted of both murder in the first and second degree, that this instruction was both erroneous and harmful. It is not certain that this last proposition is clearly raised in the motion for a new trial, but in the disposition we shall make of the case, we shall treat the case as if this point were sufficiently raised. This last proposition is the only one that we care to notice at length. We think, since appellant had been acquitted on the former trial, of both murder in the first and second degree, and since neither murder in the first or second degrees were mentioned to the jury, or defined, or any mention made of them, that the effect of this paragraph of the court's charge was merely to instruct them with reference to the circumstances under which he would be deprived of his perfect right of self-defense, and that the concluding clause of the paragraph of the charge

criticized, "and if you so find from the evidence, beyond a reasonable doubt, the homicide would be manslaughter under the law herein given you in this charge," might be rejected as surplusage, and as having no proper relation to the case, and without effect and without injury. But if this is not true, then clearly under the settled rule of law in this State, appellant is without just cause of complaint. This question came before this court very soon after I became a member of it, was made a matter of careful consideration and debate among us, and was definitely settled in the case of Cornelius v. State, 54 Texas Crim. Rep. 173. In that case in an unanswerable argument, Judge Brooks laid down the rule clearly that there was no constitutional inhibition against using what is ordinarily denominated murder evidence to convict one of manslaughter. In the course of this decision, he uses this language: "Appellant in this case had, on a previous trial, been acquitted of the two degrees of murder, and upon this trial was convicted of manslaughter, and his insistence, as stated in the bill, is that the evidence showing nothing but murder in the first or second degree, that he is entitled to an acquittal, and cites us to the case of Parker v. State, 22 Texas Crim. App., 105, and Fuller v. State, 30 Texas Crim. App., 559. This question has also been before this court in the case of Turner v. State, 41 Texas Crim. Rep., 329; 54 S. W. Rep., 579, and Pickett v. State, 43 Texas Crim. Rep., 1, 2 Texas Ct. Rep., 722. Also in other cases. In view of the confusion growing out of the rendition of said opinions, we deem it necessary to review the question presented in the light of the Constitution and laws of this State. Section 10, of the Bill of Rights, provides, that a defendant in all felony cases shall have an indictment preferred against him by a grand jury, which indictment must show the nature and cause of the accusation against him, and he is entitled to a copy thereof. Section 14, of the Bill of Rights, provides, that "no person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty, in a court of competent jurisdiction." Judge Hurt, in the case of Hirshfield v. State, 11 Texas Crim. App., 207, in passing upon the words "same offense," in the last cited article of the Constitution, uses this language: "Under the Constitution, no person shall be twice put in jeopardy for the same offense. What is meant by the term 'same offense?' Does it mean the same offense eo nomine, or the same act or acts? Let us consult our Code. From it we learn that an offense is an act or omission forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed by this Code. 'An act forbidden,' etc. From this we are not to infer that a single act in every case constitutes an offense. These, however, under this definition, are considered the act which is forbidden or punished by law. To these acts or omissions, the Code, in most of the cases, has given names. This, however, is conventional. To the act constituting larceny under the common law, the Code gives

the name of theft. But back to the proposition. The Constitution prohibits placing a citizen twice in jeopardy for the same offense. Is the name given to the act or acts which constitutes the offense to control, when we are seeking to determine whether it be the same offense or not, or must we not look to the act or acts, or the omissions prohibited and punished by the Code, in order to determine this question? We must, in determining whether they are the same offense or not, look to the act, acts or omissions; for these, and not the name by which they are called or denounced by the Code. We, therefore, conclude that a person shall not be twice put in jeopardy for the same act, acts or omission, which are forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed in the Code.' See along the same line Adams v. State, 16 Texas Crim. App., 162. Then, under an indictment for murder, what is the act, acts or omission that appellant is being tried for? It is the homicide; it is the killing. If he is acquitted of the killing, that is, any and every form of unlawful homicide, by a verdict of the jury, there is a constitutional inhibition against a new trial for said act, omission or offense. In other words, the Constitution does not contemplate that appellant can invoke the same unless he has had a jury to say by a verdict in the court of competent jurisdiction, that he is not guilty of any personal violence to another, where he is indicted for murder. In other words, there is no constitutional inhibition against using what is ordinarily denominated murder evidence to convict one of manslaughter. If murder in the first and second degrees and manslaughter are different offenses, within the contemplation of the Constitution of this State, then under the first cited clause of the Constitution one could not be tried for murder and convicted for manslaughter, since the Constitution provides that he must have an indictment, which indictment must state the nature and cause of the accusation against him. If murder is a distinct offense within the contemplation of the Constitution, then one could not be legally indicted for murder and tried for manslaughter any more than he could be indicted for burglary and tried for arson. He must have an indictment charging the nature and cause of the accusation against him. The degrees of homicide are not distinct offenses, but are merely grades of one common offense, to wit: homicide. Before appellant could ask the charge above quoted, we would have to hold that one could be indicted for murder and tried for manslaughter. If appellant, as stated, has a jury to return a verdict of not guilty under an indictment for murder or manslaughter, then he can plead this in bar of his subsequent prosecution, for the grade of offense for which he is so indicted, but upon the trial of a case of murder, where the jury returns a manslaughter verdict, and it returns for a new trial by reason of reversal or otherwise, it is a denovo trial, inflicting upon appellant the punishment for the grade of the offense of homicide of which he had been previously acquitted, but there is neither constitutional nor statutory

inhibition against using the same evidence to prove the homicide upon the subsequent trial, and the conviction of appellant of any lower grade of homicide than that of which he had been previously acquitted. Article 762, of the Code of Criminal Procedure, reads as follows: 'If a defendant, prosecuted for an offense which included within it lesser degrees, be convicted of an offense lower than that for which he is indicted, and a new trial be granted him, or the judgment be arrested for any cause other than the want of jurisdiction, the verdict upon the first trial shall be considered as an acquittal of the higher offense but he may, upon a second trial, be convicted of the same offense of which he was before convicted, or any other inferior thereto.' This is the only inhibition against a homicide trial in this State, where a new trial has been granted, the trial thereafter being in every instance denovo. Were it not for this statute, every trial for homicide under the Constitution of this State would be a denovo trial, regardless of the previous verdict of the jury, since, as we have seen, there is no constitutional inhibition against the same being a denovo trial for every grade of the offense, but the inhibition is simply statutory. It will be seen from reading the above cited article, that it only inhibits the penalty for the grade of offense for which he had been acquitted from being imposed in the second trial. If appellant, on the first trial, is acquitted of murder, how could he be convicted upon a subsequent trial for manslaughter, upon evidence that only suggests murder in the first or second degree, without using the evidence that was introduced upon the first trial, in the subsequent trial? We know, in practice, that the State insists upon getting the witnesses who are cognizant of the facts; having secured said witnesses, they introduce them on the trial in the first instance. It is left to the judgment of the jury in the first instance, to find appellant guilty of either murder in the first or second degree, or manslaughter. Then the identical same evidence is alone the proof that the State can adduce upon the second trial, and this statute recognizes that fact, and says that upon the second trial he can not be punished for the grade of offense of which he has been acquitted, but can be punished for the same or any lower grade of which he has been previously convicted. When a party is indicted for murder under that form of criminal pleading, he can be convicted of any grade of culpable homicide, thereunder. This conclusion is fortified by subdivision 9, of article 817, of the Code of Criminal Procedure, which reads as follows: 'Where the verdict is contrary to the law and evidence. A verdict is not contrary to the law and evidence, within the meaning of this provision, where the defendant is found guilty of an offense of inferior grade to, but of the same nature as the, offense proved.' This statute is in line with the reasons above stated, and precludes any other conclusion than that the evidence in each instance can be used to convict of the lower grade of offense, regardless of the previous verdict. If a party can not get a new trial on the ground that he had been

convicted of a lesser grade of offense than he is guilty of, then it follows as night follows day, that you can use murder evidence to convict one of manslaughter. If murder is a distinct offense from manslaughter, and not merely a different grade of homicide, an acquittal of a grade of murder is an acquittal of manslaughter, then, under the Constitution of this State, you could not use murder evidence to convict for manslaughter, but they are not different offenses within the contemplation of the Constitution, but, as stated above, simply grades of one common offense, to wit: homicide. Furthermore, the decisions of this State have uniformly enforced the provision of the last cited article, and held that where one is being tried for an offense which contains grades, and he is acquitted of the higher grade, and convicted of the lesser one, that he can not come to this court and ask a reversal of the case on the ground that the evidence does not support the lesser grade. The authorities are so numerous on this question, we do not deem it necessary to cite them. If the grades of homicide are different offenses within the contemplation of the Constitution, why can not appellant complain that he is convicted of a lesser grade than he was charged with by evidence that only proves the higher grade? Certainly, if one was indicted for murder, and convicted of disturbing the peace, it would not be any answer to his motion for a new trial to say that he had been punished for a lesser offense than he was guilty of under the evidence. We would promptly reply to that character of motion that he had been convicted of an offense of which he had no indictment against him, and it is only one theory and one theory alone that you can indict a man for murder and convict him of aggravated assault, and that is on the legal and constitutional theory that an indictment for murder includes within its legal scope, all grades and character of unlawful violence to the person of another, and the different penalties attached to the different grades is not a reason for saying that there is an inhibition in the statutes or Constitution of this State against using evidence of the higher grade to convict of the lower. Burnett v. State, decided at the present term, and not yet reported. We accordingly hold that appellant's charge was not correct in law, and the court did not err in refusing to give same; and we further state that to whatever extent any decisions conflict with the views herein stated, they are hereby overruled."

The same general question came before the court also earlier in the case of Burnett v. State, 53 Texas Crim. Rep., 515, where the court used the following language: "There has been, on this question and kindred questions, a number of opinions rendered by this court, which, at least in their language, are not wholly consistent. We think the rule laid down in Pickett v. State, 43 Texas Crim. Rep. 1, 63 S. W. Rep., 325, is supported by the best considered decisions of this tribunal, and is so intrinsically sound and just as to be a sufficient support for our decisions in this case. The rule, as there stated

by Judge Davidson, is 'Where defendant was acquitted of murder, and convicted of manslaughter, and on appeal the judgment was reversed, he was not entitled in the succeeding trial to an instruction to acquit him of the charge of manslaughter, if the evidence showed him to be guilty.' It appeared in that case as it appears in this, that there was evidence which would have authorized a conviction of either murder or manslaughter, and the appellant requested the court to instruct the jury that if they believed from the evidence that Pickett was guilty of murder in the second degree, they should acquit of manslaughter. The effect, as stated, of that instruction, and the contention there made, was that an acquittal of murder would operate as a bar to the conviction of manslaughter under the same indictment, although there was evidence supporting the latter offense. It is there stated, which is undeniably true, that it has been uniformly held that where a party had been acquitted of a higher degree, or grade, of offense that he can not again be convicted of that grade or degree, but that such acquittal does not operate as a bar in the prosecution of the inferior degree of such offense. On that very issue Judge Davidson says: "Appellant's contention is that the jury should offset manslaughter with the acquittal of murder, and therefore acquit if they find from the evidence that defendant is guilty of the higher offense; both of which are but grades of the same offense, and triable under the allegations of the indictment. We can not assent to this proposition. In Parker's case, 22 Texas Crim. App., 105, 3 S. W. Rep., 100, the trial court instructed the jury that they could use the testimony showing murder as a predicate for the conviction of manslaughter, although the party had been previously acquitted of murder. That is, appellant could not again be tried for murder when he had been once acquitted of that offense. That case rests upon that proposition. Other cases are numerous to the effect that, where there is evidence of a higher grade of offense, a conviction will not be disturbed for the inferior degree, though there was no testimony showing the inferior degree. These are expressly recognized and sanctioned in Parker's case. Fuller's case, 30 Texas Crim. App., 559, 17 S. W. Rep., 1108, is authority for holding that a conviction for murder in the second degree can be had where the evidence shows murder in the first degree. This seems to be predicated upon the idea that malice is a constituent element of both degrees of murder. The Fuller case was reaffirmed in Conde's case, 35 Texas Crim. Rep., 98; 34 S. W. Rep., 286."

Our law makers seem early to have recognized that just such contention as that which confronts us now would often ·occur. In our Code of Criminal Procedure, paragraph 9, Article 817, we find the following provision: "Where the verdict is contrary to the law and evidence. A verdict is not contrary to the law and evidence within the meaning of this provision, where the defendant is found guilty of an offense of an inferior grade to, but of the same nature as, the offense proved."

In Campbell v. State, 10 Texas Crim. App., 560, Judge Winkler, passing on a similar question, said, "If there is any variance between the proof and the finding of the jury, it will be found on a careful examination that the evidence tends rather to establish a higher grade of offense than manslaughter, rather than a lower grade. If this be true, and if, by the administration of the law, one accused of crime, should be convicted of a lower grade of the crime included within the offense charged in the indictment than the proof warrants, certainly the defendant has no just ground to complain that he has been convicted of a grade of offense lower than the testimony warranted, and one for which a milder punishment is prescribed by law. In this case, however, on account of the fact that on a former trial, the defendant had been virtually acquitted of murder, he could not be put on trial for that grade of offense the second time, but this did not prohibit the State from calling upon him to answer for a lower grade of offense, included within the crime charged in the indictment, and for which he had not been previously tried; and to hold that a conviction for the lower grade of offense could not be sustained on the ground that the proof did not reduce the offense to the lower grade, would be to say that the State could not inflict any punishment for the offense, whatever, no matter how plain the evidence of his guilt. Such an application of the law would be a monstrous mockery not to be tolerated."

Murder in the first degree, murder in the second degree, and manslaughter, are not, in the strictly legal sense, different offenses, but merely different grades of the same offense. They are all species of unlawful homicide. The provision of our statute, by which in terms, it is said that the mere fact that one is convicted of a lesser grade of offense than that which the evidence shows, should be no ground for a new trial, was but a legislative declaration that because, in any case, the wrongdoer had not received the punishment to which he was entitled, should be no ground or cause why he should go unwhipped of punishment at all. At best the grades and degrees of an unlawful killing are more or less arbitrary, and the line between them sometimes difficult to be drawn. It was intended, as it should have been intended, to punish every man when he had unlawfully and intentionally taken the life of his fellowman, and to hold that because a former jury had acquitted the appellant in this case of murder in the first or murder in the second degree, that he is of right entitled on the second trial to go free, because another jury might conclude under a charge giving these necessarily technical definitions that the offense was murder in the second degree, is to absolutely nullify the substantial provision of our Code of Criminal Procedure, above quoted. In this case, the court defined manslaughter in terms that are substantially beyond criticism, and submitted to the jury the issue, or fact, as to whether, in the light of the evidence, and the instruction so given, the appellant was guilty of this offense. Having been acquitted of murder

in the first degree, and murder in the second degree, it was not the right of appellant to have these degrees defined or submitted, or one offset by the other. This we understand to be clearly the rule, and is so in accordance with justice, and so supported by the provisions of our Code above quoted, as to require us to follow it. For these reasons we believe the court did not err in refusing to give the special charge above referred to.

This, too, is in accordance with the safe and sane rule laid down in Hobbs v. State, 55 Texas Crim. Rep., 299, where we said: "It will thus be seen that under the charge of the court, by necessary implication, appellant was given the full benefit of the fact, reducing the killing to manslaughter, and the jury was charged, as a matter of law, that the adequate cause named in the statute did exist as completely as if the unequivocal admission had been made that his wife did communicate the facts of the insult to him, and that he (appellant) believed her statements to be true, and that they were in fact true." Again, in the recent case of Anthony v. The State, not yet reported, we held in passing on a charge in respect to manslaughter not entirely or technically accurate, that "since, however, appellant was found guilty of manslaughter, and such finding of necessity was a finding adverse to his plea of self-defense, such error becomes utterly immaterial." Now, then, in this case, when same came on for trial, the matter stood in this wise: The appellant had theretofore been acquitted of murder in both the first and second degrees. He could not, under the provisions of our law, be either tried or convicted of either of these degrees of unlawful homicide. The case, in the absence of any suggestion in the evidence to support any theory of negligent homicide, or any lesser degree of unlawful killing, was, on the part of the State, a case of manslaughter. On the part of appellant, it was contended that the killing, which was admitted, was in self-defense, and therefore under our law justifiable. The issue was therefore narrowed down to this: If the killing was unlawful, the law punished as for manslaughter. If it was in self-defense, the appellant was entitled to go free. The case was not embarrassed with all those niceties of distinction which sometimes vex more than they aid or enlighten. It was just such a contingency as this that our lawmakers, with rare wisdom and prescience, foresaw, and, having this contingency in mind, they made both wise and ample provision for it. They thought out and planned our Penal Code and Code of Criminal Procedure on the basic principle that all offenses for which a free man could be punished, must be defined in clear and intelligible language, and at the same time made the clearest provision, and gave assurance by ample guaranties that his right of self-defense should never be abridged. They knew, however, as we know, that these laws were to be enforced and interpreted by men. They must have known that they would not be enforced with automatic regularity or the shadowy lines of precise degrees always fol-

lowed with the precision of the map maker. It was to meet the precise condition exhibited in this case, that they enacted the clause of our Code above referred to, "a verdict is not contrary to the law and evidence, within the meaning of this provision, where the defendant is found guilty of an offense of inferior grade to, but of the same nature as the offense proved." If these views are correct, and the opinions of this court, in Cornelius v. State, and Burnet v. State, and other cases referred to, are to stand, then the case must be affirmed. I am convinced that they are the law, and if they had never been written, I would today, following my judgment, after the most careful examination and patient consideration, so write the law. And to now unsettle these decisions, and to nullify and strike down a statute which was intended to, and does, settle the matter, would be worse than mere child's play, and from my point of view, would justly subject this court to the charge of trifling with the law, and of engaging in the phantom task of pursuing mere abstractions, while neglecting "the weightier matters of the law." Besides, it is clear that whether the charge is correct or not, it is favorable to the appellant, and places on the State a heavier burden than the law recognizes. His offense would have been manslaughter if he provoked the difficulty with the intent only to whip or injure deceased. He can not complain if the court, in his charge, required the jury to find that his intent in provoking the difficulty, was to kill Phillips, or do him some serious bodily injury, when the law only required that it should find that his intent was to whip or injure him.

Finally, as I have said, if these opinions are to be followed, we think it can not admit of doubt that they are conclusive of appellant's contention. To my mind they lay down a correct doctrine. I am authorized, by Judge Love, to say that he is personally inclined to the same view, but in any event, since it is now the settled ruling of the court, that he would not feel authorized to depart from the holding of these cases, unless he thought them wrong practically beyond dispute.

There are a number of other questions raised on the appeal, but they are not of sufficient importance in our opinion to require a discussion. After the most careful investigation that we have been able to give to the case, aided as we have been by the fullest and most splendid presentation of the issues by counsel, both for appellant and for the State, we believe that there was no error committed on the trial of the case of which appellant can reasonably complain, and it is therefore ordered that the judgment of conviction be, and the same is, hereby in all things affirmed.

Davidson, Presiding Judge, dissents.

*Affirmed.*

LOVE, SPECIAL JUDGE.—I fully concur in the foregoing opinion of Judge Ramsey, holding that there is no reversible error in this

case, and that it should therefore be affirmed. In view of numerous decisions of this court, I have no doubt that the issue of provoking the difficulty was raised by the evidence, and should have been submitted to the jury, and in view of the decisions in Pickett v. The State, Cornelius v. The State, and Burnet v. The State, all of which I believe to be applicable and controlling, I am clearly of the opinion that there was no reversible error committed by the giving of the 13th paragraph of the court's charge.

ON REHEARING.

March 29, 1911.

PRENDERGAST, JUDGE.—Because of the importance of the questions, and the great interest taken in this case by both sides, and of the able and earnest contention by the appellant's attorneys in both oral and written arguments, I have undertaken to thoroughly investigate this case for myself, and have given it an unusual length of time and study.

I deem it altogether unnecessary to undertake to discuss in detail the questions raised, and will not do so. However, I will state some of the matters in order to show some of the reasons for my conclusions.

All of the questions raised in the presentation of the case originally, are presented again by the motion for rehearing. I have carefully gone over all of these matters, and have reached the conclusion that they neither singly, nor taken together, show any reversible error in this case, which should change the disposition as made by the opinion delivered for the court by Judge Ramsey.

However, the two questions which are most persistently presented and urged, are, that the question of provoking the difficulty by the appellant was not in the case, and the claimed error in paragraph 13, of the charge of the court, on the question of the defendant's claim of self-defense, which was his main reliance for acquittal on the trial.

1. As to the question of whether or not provoking the difficulty by appellant is in the case: There are several circumstances in the case, unnecessary to detail, which the jury were authorized, and I think it was their duty to consider, in determining this question, and for the court also in determining whether or not he would give a charge on the question. This record unquestionably shows that the appellant had both a pistol and gun at his residence; that he took neither of them with him on this occasion, because he had no ammunition for either. He, however, shows by his own testimony that he expected to meet the deceased at the village where he was killed, and that he was reasonably certain that he would do so. In going there he stopped at his brother's, and there procured the pistol with which the killing was done. When he first got the pistol it was unloaded, somewhat rusty, and did not work well. He proceeded to oil it and clean it, so that it would work properly and effectively, and then loaded and took it with

him. When he first arrived at the village where the killing took place, and when he was hitching his team, or just after he had hitched it, the deceased came up to the buggy, procured some traps out of it, and a conversation then occurred between appellant and deceased. They then separated, the defendant going some distance to the front of the store, and went into the front at the northeast corner. The deceased, after he procured the traps out of defendant's buggy, then went into the back end of the store and put them down. Thereupon the defendant approached him and told him he wanted to see him, and asked him out for that purpose. The deceased went out with him, or followed his lead from the rear end of the store to a fence at least forty feet back from the store, where both parties stopped and began a conversation, the deceased leaning upon the fence, the appellant either doing so or was right at it.

It is clear by the testimony of the defendant himself, as well as others, that the deceased was in his shirt sleeves, had neither coat nor vest on. The defendant says, "I never saw any sign of any pistol at all, and I never saw any pistol on the deceased." As a matter of fact, it was clearly shown that he had no pistol, and that the only weapon that was ever shown to have been in his hand, or about his person, was a pocketknife. The defendant also shows by his testimony that the only reason or cause that he cleaned, loaded and carried his brother's pistol with him to the village, was that he believed he would meet the deceased on that occasion.

When they got to the fence, by appellant's own testimony, on direct examination, he said to deceased, "Will, wasn't you always treated right at my house? and he says, 'Yes.' I says, 'Was you ever mistreated?' and he says, 'No,' and then I says, 'G— d— you, what did you do Nora like you did for?' He says, 'Don, I don't blame you for being mad, but I'm not going to take any abuse off of you.' I says, 'You G— d— son-of-a-bitch, I have got it to give, whether you can take it or not.' He (deceased) just stood there a few seconds and turned around and walked towards the back end of the store."

On cross-examination he testified: "When we got out to the fence, I claim that I asked him if I hadn't always treated him right. He said, 'Yes,' and I asked him if I had ever mistreated him, and he said, 'No,' and I cursed him and asked him, 'What did you do Nora the way you did for?' He says, 'I don't blame you for being mad but I'm not going to take any of your abuse.' I cursed him and called him a son-of-a-bitch. I said, 'You G— d— son-of-a-bitch, I have got it to give whether you can take it or not.' I don't know what was said then. He had a knife in his hand. There might have been something else said, I don't remember of anything that was said. . . He started to the house. . . . He started first, and I was sorter behind. He was ahead. I followed him talking to him. I suppose I was still abusing him. When he got close to the door he says, 'Now, G— d— you, shut up.' I says, 'You G— d— son-of-a-bitch,

you will have to make me.' It is a fact that I said, 'You G— d— bastardly son-of-a-bitch, you will have to make me,' that is what I said. I have so testified heretofore in this case. . . . I said, 'You G— d— bastardly son-of-a-bitch,' that is what I said. Up to that time I had cursed him and called him a son-of-a-bitch and he had made no effort to make an assault on me before that time. He then turned around and said, 'By G—, I can do it.'" The appellant then shows that the deceased advanced towards him at least one step with the knife drawn as if to assault him, and he then shot him three times in rapid succession; that the deceased was right at the back door of the store, in the act of getting in it or in it when he shot the last of the three shots.

It is contended that the evidence in this case shows that the deceased himself provoked the difficulty by, first, his conduct and language to appellant's wife, and, second, when in effect he admitted it or reiterated it to appellant just before the killing. Conceding that both these things occurred, and that they were sufficient to justify appellant to call upon him armed as he was, neither, nor both, of them would have justified appellant in killing him. They would simply at most have reduced the killing to manslaughter. But appellant did not then kill him. Deceased did not then attack appellant, but walked away from him—tried to get away from appellant and his abuse and cursing, and offensive epithets. The deceased's bringing on the difficulty, if he did, had then spent itself. It was then that the appellant's acts, words and conduct began and continued which authorized and required the court to submit this question to the jury.

It is perfectly evident and clear to my mind that all this evidence showing this following up of the deceased by appellant, and continued following up, and this abuse, and continued abuse, and this cursing him, and repeated cursing him, and this abuse of the most offensive epithets and the repitition of them, and the additional one of "You G— d— bastardly son-of-a-bitch," and then when the deceased told the defendant to "shut up," he replied, "You will have to make me," was such evidence that the jury could find therefrom a provoking of the difficulty intentionally done by the appellant for the purpose of causing the deceased to attack him so as to give him the opportunity to kill him in claimed self-defense, which, up to that time he had not had. In my opinion it not only called for the submission of this question by the lower court, but it justified, if it did not actually require, the jury to find that the defendant was doing all this and did do and say all this, for the very purpose, and with the intent of provoking the deceased to attack him so that he would have the opportunity to kill him if he did so. And if the jury believed he said and did all this for that purpose, and with that intent, it unquestionably prevented his being acquitted on the ground of self-defense. So that in my opinion there can be no doubt but that the question of provoking a difficulty was in this case, and that the evidence imperatively re-

quired that the matter should be submitted to the jury by the trial court.

There is no question but that this court, by at least two—Judges Brooks and Ramsey—if not all the judges, on the previous appeal of the case, held pointedly that provoking the difficulty by the defendant was clearly the cause, and should have been submitted to the jury. And the case was retried by the lower court, by authority of and in conformity with such previous holding. In addition to this, the Court of Civil Appeals, for the Third District, also specifically, in the civil case of Phillips v. Gray, so held. The evidence in the civil case, was substantially, if not precisely, the same on this question as on this trial. The Supreme Court denied a writ of error in said civil case, thereby also holding that that question was in the case. So that this court so held by at least two of the judges on the former appeal, and by two of the judges again in this appeal, the case was retried and the district judge so held, and the said Court of Civil Appeals and Supreme Court so held.

2. Then the next question to be considered is whether or not the court erred in paragraph 13, of this charge. This paragraph 13 (and I might say, too, in connection with it, paragraph 14) is attacked most vigorously and persistently by the appellant on many grounds; among them is, that by paragraph 13 the court submitted the question of malice, of which the defendant claims he had been previously acquitted, and that thereby the jury was caused to fix a higher penalty for manslaughter than it otherwise might or would have done; also that provoking a difficulty necessarily embodies in it the question of malice, and that the court had no right to submit the condition of the defendant's mind showing murder, which would authorize the jury to convict him of manslaughter when he had already been acquitted of murder, and that the provocation for the difficulty was brought about by Phillips, and not by defendant, in that deceased provoked the difficulty, first, by insulting his wife several days previously, which had unquestionably been communicated to the appellant, and second, when called upon by the appellant on the occasion he, in substance, admitted it or reiterated it, and that the giving of said charge was calculated to arouse the passion of the jury and cause it to affix the highest penalty for manslaughter. The appellant also contends that the use of the word "reduce" in paragraph 4, of the charge wherein the court says this: "In order to reduce a voluntary homicide to the grade of manslaughter," taken in connection with the words used in paragraph 13, of the charge, clearly defined murder, and in effect submitted the question of murder, and told the jury in effect that if he was guilty of murder, they would find him guilty of manslaughter, and that this charge taken in connection with various other words and phrases picked out here and there from different paragraphs of the court's charge, was in direct violation of Article 708, of the Penal Code, which says: "Though the homicide may take place under circumstances

showing no deliberation, yet if the person guilty thereof provoked a contest with the apparent intention of killing or doing some serious bodily injury to the deceased, the offense does not come within the definition of manslaughter."

Thus I have given substantially the various objections so persistently and earnestly urged by the appellant and his attorneys to the said paragraph 13 of the court's charge. I may have omitted to state some of them. If so, I have not omitted the consideration of each and every one of them in arriving at the conclusion I have reached.

It is useless to further state anything in connection with the evidence raising the question of whether or not the defendant's acts, conduct and words at the time called for a charge on the question of provoking a difficulty. There is absolutely no doubt the evidence not only authorized but, in my opinion, required that it should be submitted.

This paragraph 13 of the court's charge is not on the subject of murder in either degree. It does not submit the question of malice directly, nor by implication. It was solely on the subject of the appellant's claim of self-defense. It would be a strained and improper construction of it to claim that it is on the subject of murder, or that it submits the element of murder either directly or by implication. In my opinion it did not. Neither does this charge in its conclusion or otherwise, authorize or direct the jury to find the defendant guilty of manslaughter, because of any implied malice, nor because of any implication therein calling for a finding by the jury on the subject of murder, nor does it authorize or permit the jury to find him guilty of murder and punish him for manslaughter. I am also clearly of the opinion that said paragraph ought not to have influenced the jury to fix a higher penalty, and did not have that effect. The concluding part thereof, in these words: "and if you so find from the evidence, beyond a reasonable doubt, the homicide would be manslaughter, under the law herein given you in this charge," to my mind is a clear statement to the effect that whether or not they would find him guilty of manslaughter, was not to be controlled or influenced by this charge other than it did not permit the defendant to be acquitted because of his claimed self-defense, but that the law of manslaughter was given to the jury in other separate and distinct paragraphs from this in the charge; and to contend and hold that said paragraphs had the effect claimed by defendant, is unreasonable, and is a strained and improper construction and application thereof in this case; and I think that it is also unreasonable to seek to show that this charge is not the law applicable in this case, by picking out here and there in other distinct portions and paragraphs of the charge of the court, such words as "reduce" in a portion of paragraph 4, of the charge, and other words or paragraphs from other distinct portions of the charge, and attempt to attach them on to this paragraph for the purpose of showing an error therein.

The other questions herein have been fully, ably and correctly discussed and decided by the original opinion herein. So that upon the whole, I am thoroughly convinced and clearly of the opinion that there is no reversible error in this case, and that the motion for rehearing should be overruled, and it is hereby overruled.

*Overruled.*

March 29, 1911.

HARPER, JUDGE, (concurring).—This is a case that has been pending in this court for a great length of time, and has been ably presented by the attorneys for the State and defendant.

The first question presented is, that the court erred in submitting the issue of provoking a difficulty, it being claimed, first, that the evidence did not raise the issue; second, that if the evidence did raise the issue, it was improperly presented. After a careful review of the testimony, we have come to the conclusion that the evidence raised the issue, and it was proper for the court to submit it to the jury for their determination. The defendant admits that he had carried some wolf traps to deceased at Valley Springs, on Saturday evening, and that deceased came to the buggy and got the traps, saying to defendant, "Hello Don, what luck?" Deceased went back into a store with his traps when defendant says he followed him into the store, and after he put the traps down, told deceased he wanted to see him, and went on out, about forty feet back of the store. Deceased came out, when defendant accosted him, and asked him why he insulted his wife. Defendant says deceased replied he did not blame him for being angry, but he would take no abuse off of him. Defendant admits he then said, "You God d—n son-of-a-b—h, I have got it to give you whether you take it or not." That after he had cursed deceased, deceased started back to the store, when he, defendant, followed him, calling him a son-of-a-b—h, and cursing and abusing him. That when deceased got close to the door, he remarked, "Now, God d—n you, shut up." Defendant says he replied, "You G—d d—n bastardly s-n-of-a-b—h, you will have to make me," when deceased replied, "By G—d I can do it," and turned and faced defendant, coming towards him a step or two, with a knife in his hand, when he, defendant, shot him. Defendant says he shot three times, deceased being in the door of the store the last shot. This is as defendant presented it.

One of the State's witnesses states that deceased was in the door when the first shot was fired, with his back towards defendant. The State's theory was that deceased was shot in the back all three times. Defendant's theory was that deceased was facing him when the first shot was fired, but had turned to go in the door when the last two shots were fired. The body was exhumed, and two shots were in the back, there is no doubt; as to the shot over the ear, it is not clear from which direction it came. Defendant claimed deceased had insulted his wife several days before, and that he carried a pistol with

him to demand an explanation, and as deceased gave no satisfactory explanation, the killing was manslaughter. No matter how much he cursed and abused him, provoking the difficulty could not arise in the case. In this we do not agree with him. The law makes insult to a female relative manslaughter on the ground that one is in such an ungovernable rage he is incapable of contemplating the act. Had defendant killed deceased when he first saw him at the buggy, there would have been some ground for thinking him in an ungovernable rage, but he lets deceased take out his traps and go in the house. He follows him, takes him forty feet behind a store, and begins by cursing deceased, and when deceased does not resent it, but starts back in the house, he follows him, cursing and abusing him. If he was in that frame of mind, that the insult to his wife caused that degree of anger, rage, resentment or terror as to render him incapable of cool reflection, why was it he waited so long to fire the fatal shot? Did he follow deceased cursing and abusing him in the hope he would turn and he could claim to have killed him in self-defense? If that be true, he did not kill him because of the insult to his wife. These were questions in the case to be presented to the jury, and the court acted properly in submitting them. If the jury believed defendant followed deceased cursing him in the hope deceased would do some act enabling him to claim he did the killing in self-defense, then he would be provoking the difficulty.

Defendant further insists that he had been once tried and only found guilty of manslaughter; that the question of provoking the difficulty, for this reason, was eliminated. Defendant was charged with unlawfully killing deceased. This was the offense charged against him, and although the court was correct in only submitting the issue of manslaughter in his charge, the State was authorized to introduce all the evidence at its command to show an unlawful killing. If it had learned of additional testimony since the former trial, it would have been authorized to introduce it, and the court should give a proper charge under all phases of the testimony introduced on that trial of the case. As we view it, the testimony in this trial presented the question, whether defendant killed deceased in an ungovernable rage on account of the insult, or did he endeavor to so act as to be able to claim self-defense in the killing, seeking to provoke deceased to some hostile act. The court did not err in submitting this issue to the jury, for their determination. Neither do we think the court erred in his charge in this respect. The following is the charge:

"9. Every person is permitted by law to defend himself against any unlawful attack, reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, and homicide is justified by law when committed in defense of one's person against any unlawful and violent attack made in such manner as to produce a reasonable expectation or fear of death or some serious bodily injury.

"10. A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"11. If, from the evidence, you believe the defendant killed the said Will Phillips, but further believe that at the time of so doing, the deceased had made an attack on him which, from the manner and character of it, and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear the defendant killed the deceased, then you should acquit him; and if the deceased was armed at the time he was killed, and was making such attack on defendant, and if the weapon used by him, and the manner of its use were such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant.

"12. You are further instructed that where a person is acting in his self-defense, under the law, as explained in this charge, and commences to shoot in his self-defense, the law gives him the right to continue to shoot as long as he believes his life to be in danger, or believes that he is in danger of receiving serious bodily injury at the hands of his assailant, or if viewed from his standpoint, it reasonably appeared to him that he is in such danger.

"13. You are instructed that if you find from the evidence in this case beyond a reasonable doubt that the defendant went to where the deceased was killed, and by his own wrongful act (if any there was) brought about the necessity of killing the deceased, Will Phillips, and that defendant provoked a difficulty with said Will Phillips, with the wrongful and wilful intention to take the life of deceased, or inflict upon him serious bodily injury, and you further find that the defendant knowingly and wilfully, and with the specific intention and with a view thereto, used toward deceased language, or did acts, or did both, for the purpose of causing deceased to attack defendant, that he might have a pretext to kill him or inflict upon deceased serious bodily injury, and you find that such language or conduct or acts on the part of the defendant (if any such there was on the part of defendant) was reasonably calculated to bring on the difficulty and cause the deceased to attack the defendant, and you further find from the evidence, beyond a reasonable doubt, that the defendant, in pursuance of a wrongful, wilful and previously formed design to provoke a difficulty with deceased for the purpose and with the

intention of killing him or inflicting upon him serious bodily injury, and you further find from the evidence, beyond a reasonable doubt, that intentionally, and with a view thereto, he shot with a pistol and thereby killed deceased, then you are instructed that the defendant's plea of self-defense will not avail him in this case, and if you so find from the evidence beyond a reasonable doubt, the homicide would be manslaughter under the law herein given in this charge.

"14. If on the other hand you find that the defendant called the deceased out to interrogate him concerning language or conduct attributed to deceased concerning defendant's wife, and with no intention to provoke a difficulty with deceased with the intention to kill or inflict upon deceased serious bodily injury, then you are instructed that defendant's right of self-defense would in no way be limited, and if under such circumstances the deceased attacked the defendant with a drawn knife or otherwise, or it reasonably appeared to defendant that such was the intention of the deceased, then the defendant would have the perfect right of self-defense as explained to you in this charge.

"15. On the other hand, unless you find from the evidence beyond a reasonable doubt that the defendant provoked a difficulty with the deceased for the purpose and with the specific intentions as above explained to you in this charge, then you are instructed that the defendant's right of self-defense would in nowise be limited, and if you find that deceased, Will Phillips, was advancing toward defendant with a knife for the purpose of killing or inflicting upon defendant serious bodily injury, or if you believe that it reasonably appeared to the defendant, viewed from his standpoint, that it was the intention of the deceased so to do, and that defendant, to save his own life or to protect himself from receiving serious bodily injury at the hands of the deceased, Will Phillips, or from what reasonably appeared to him to be such viewed from the defendant's standpoint, and that under such circumstances he shot and killed the deceased, then you are instructed that the defendant would be justified in killing deceased, and if you so find the facts to be you will acquit the defendant and return a verdict of 'not guilty.'

"16. You are further instructed that if the defendant had been informed by his wife that deceased had been guilty of insulting language or conduct towards her, the defendant would have the right to arm himself and go to the deceased to inquire of him in regard thereto, and to demand an explanation from the deceased, and if in so doing the deceased made an unlawful attack upon the defendant for the purpose of killing or inflicting upon defendant serious bodily injury, or if, viewed from defendant's standpoint, it reasonably appeared to defendant that such was the intention of the deceased, then the defendant would have the right to defend himself against such real or apparent danger, and if in so doing he killed the deceased, he would be guilty of no offense whatever."

This presented the question as favorably as defendant had a right to ask. The charge did not authorize the jury to convict him of any higher grade of offense than manslaughter, and if the jury believed under the facts, beyond a reasonable doubt, that the evidence, under the thirteenth paragraph above quoted, took away from defendant the right to claim to have acted in self-defense, they are the exclusive judges of the facts proven by the evidence. And if the circumstances there alleged are true, and they so found, none can claim that he acted in self-defense. Defendant's side of the case was presented in the charge, and the jury could have found that he killed the deceased in self-defense, or they could have found that he killed him in an ungovernable rage because of the insult to his wife, or they could have found that he was not in such an ungovernable rage as to render the mind incapable of cool reflection, and provoked the occasion for the killing in order that deceased would turn on him and he could justify his conduct. On the other hand, the jury may have found the State's theory true—that defendant shot deceased in the back when he was attempting to get away. Every theory of the defense was fairly presented, and he can not complain.

It is hardly fair to take an isolated paragraph of the court's charge and criticise it. In his brief appellant criticises paragraph fourteen of the charge, claiming that it shifted the burden to defendant, but when we read paragraph fifteen it is seen that the claim is not justified, for in that paragraph he tells the jury that, unless they so find beyond a reasonable doubt, his right of self-defense would not be limited, and again in paragraph twenty the jury are told that they must find defendant guilty beyond a reasonable doubt or acquit him.

Again, the defendant criticises the court's charge on self-defense, saying that the appearance of danger is not presented. If one will read paragraphs nine and ten, eleven, twelve, fifteen and sixteen, it will be seen that the apparent danger as it appeared to defendant, as well as actual danger, was presented very favorable to defendant, where there were no threats in the evidence.

Having examined the record closely, and finding no error, I concur in the opinion overruling the motion for a rehearing.

*Overruled.*

March 29, 1911.

DAVIDSON, Presiding Judge (dissenting).—At a former day this case was affirmed. The appellant has filed a motion for rehearing in which the judgment and opinion affirming has been severely criticised. I will notice such of the assignments as I deem necessary to a disposition of the case.

First. It is insisted that the appellant, having been placed on trial for manslaughter only, the question of provoking the difficulty is not in the case. To properly appreciate this question, it is necessary to state briefly a history of the case. Don Gray was indicted by the grand jury of Llano County, charged with murder in the first degree

of Will Phillips. The venue was changed from Llano to Burnet
County. There he was placed upon trial for murder in the first de-
gree, was acquitted of both degrees of murder, but convicted of man-
slaughter. From that conviction an appeal was prosecuted to this
court. The judgment of conviction was set aside and the case re-
manded for a new trial, Judge Ramsey delivering the opinion of the
court and Judge Brooks dissenting. (55 Texas Crim. Rep., 91.)
Upon that trial in the lower court, an application was made by the
defendant for an order to exhume the body of Phillips, and that an
autopsy be made for the purpose of determining the entry and range
of certain bullets—there being a controversy as to whether Phillips
was shot in front or in the back. Because of the refusal of the lower
court to make such order, this court reversed and remanded. A mo-
tion for rehearing was filed by the State and ably argued and pre-
sented. The court adhered to its original opinion.

In that case Judge Brooks based his dissent upon the theory that
it was wholly immaterial where Phillips was shot, or who fired the
first shot, as Gray had forfeited his right of self-defense by provoking
the difficulty, and thereby causing Phillips to attack him, and there-
fore the autopsy would be wholly immaterial. The court, however,
speaking through Judge Ramsey, held:

"We reaffirm our opinion that the evidence in this case did not con-
clusively show that the acts and conduct of appellant at the time were
of such nature and character as would, as a matter of law, make him
guilty of provoking a difficulty so as to cut off wholly his right of self-
defense. This was, as we have stated in the original opinion, the
judgment and belief of the learned trial court, and on this theory the
whole case in the court below seems to have been tried. It is well
settled in this State by an unbroken line of decisions that no defendant
in any case can be or has ever been held to be guilty of provoking a
difficulty unless his intent so to do was gathered from the testimony.
It is equally well settled that this question of intent is a question for
the jury. The issue and matter of provoking a difficulty implies of
necessity a certain craftiness and design. It implies of necessity an
intent and purpose on the part of the person killing a disposition or
purpose to do some act, the effect of which shall be to cause his ad-
versary to attack him, so that by appearance, at least, he shall be pro-
tected by law, and the death have the appearance of being in self-
defense, when in truth it was in pursuance of a purpose either to kill
or injure his enemy. Whether such design exists in any given case
is, of course, a matter for the jury, and such intent a question for the
jury in this case. It would be an idle mockery to say, in a case where
the law says that by an outrage against the wife of his bosom and the
mother of his child, with the defendant's mind so wrought up and
wrought upon as to render it incapable of cool reflection, that he
should, merely because of some word or abuse, forfeit his right of
self-defense. The law in this case is, if appellant had believed, as

under the facts he was justified in believing, that the deceased, who was his friend, had, under the sanctity and protection of his home, as a guest, insulted his wife by making indecent proposals to her, that this is an adequate cause rendering his mind incapable of cool reflection. The law says again that in such state of case he has a right to go to deceased; he has the right to demand an explanation. He has a right under the law to arm himself, if his purpose be for his own protection, only in the event of an attack by his adversary; and to say that in such a case that he shall be held down by the strict rules of the law, to use only the soft speech of the drawing-room or the suave language of diplomacy, is to make the right which the law gives him pure mockery. The law in its wisdom wisely provides that whether in any given case he shall be held guilty of provoking a difficulty, so as to cut off his right of self-defense, must, as a matter of fact, be a matter of intent to be gathered from all the circumstances. This is no new doctrine in this State. Among the earliest decisions of this court on this question is the case of Shannon v. State, 35 Texas Crim. Rep., 2; 28 S. W. Rep., 687; 60 Amer. St. Rep., 17, rendered by Judge Simpkins. In that case, it seems that the deceased had made some remark concerning the defendant, in the presence of ladies of their acquaintance, in substance, to the effect that he was a coward. He was approached by Shannon and said, in reply to a request for an explanation, "What I said then, I say now." Appellant then replied, "If you say I am a damned coward, you are a damned liar." Deceased again repeated, "What I said then, I say now," and appellant said, "You are a lying son of a bitch." In this case, when the first inquiry was made by appellant as to whether deceased had mistreated his wife, there was no denial; on the contrary, there was a substantial admission of the insult. The deceased's reply is, "I don't blame you for being mad. I would be mad, too; but I don't intend to take any of your abuse." It is in effect saying: "I did insult your wife. Do your worst." In the Shannon case, summarizing the matter, Judge Simpkins says: "To concede the remark was in fact made, it simply tends to prove that appellant had a grievance which impelled him to seek an explanation, to wit, that deceased had characterized him, in the presence of ladies, as a coward. But the vital question in the case, whether the interview was sought for the purpose of provoking a difficulty, must be clearly shown by the facts attending it, and not alone by the remarks of an excited boy amidst the bloody circumstances of his first difficulty. We do not feel satisfied with the verdict, and think a new trial should have been granted." This case and the doctrine here laid down has been followed with approval in many cases, of which the following are a portion: Winters v. State, 37 Texas Crim. Rep., 582, 40 S. W. Rep., 303; Airhart v. State, 40 Texas Crim. Rep., 470, 51 S. W. Rep., 214, 76 Amer. St. Rep., 736; Young v. State, 41 Texas Crim. Rep., 442, 55 S. W. Rep., 331; Hall v. State, 42 Texas Crim. Rep., 444, 60 S. W. Rep., 769;

Melton v. State, 47 Texas Crim. Rep., 451, 73 S. W. Rep., 822; Beard v. State, 47 Texas Crim. Rep., 50, 81 S. W. Rep., 33; Craiger v. State, 48 Texas Crim. Rep., 500, 88 S. W. Rep., 208; Craiger v. State (on rehearing), 48 Texas Crim. Rep., 505, 88 S. W. Rep., 208; Keith v. State, 50 Texas Crim. Rep., 63, 94 S. W. Rep., 1044; Mitchell v. State, 50 Texas Crim. Rep., 180, 96 S. W. Rep., 43; Sanders v. State, 50 Texas Crim. Rep., 430, 97 S. W. Rep., 1046; Stewart v. White, 52 Texas Crim. Rep., 273, 106 S. W. Rep., 685.

"To hold, as a matter of law, in this sort of a case, that by precipitancy of speech, even by characterizing [words] as insulting as those set out in the statement of facts, appellant shall be held to forfeit his right of self-defense, is not absolutely to be assumed in the trial of such a case. To say that appellant has indeed the right to demand an explanation, the right to seek out the despoiler of his home or the author of the insult to his wife, and yet to say to him that every inconsiderate speech shall deprive him of the right of self-defense, is to make the right which the law grants him worse than useless. It is on a par with the judgment of Portia, which did indeed decree to Shylock his pound of flesh to be taken from Antonio's bosom, but with it ran the judgment, if in so doing he shed one drop of Christian blood, that all his fortune be confiscated unto the State of Venice. Such a position as we conceive can not be sustained in law or in reason, and is opposed to every generous impulse of humanity."

When the question of provoking the difficulty was submitted by the lower court on that trial, the defendant was upon trial for murder, and it may be conceded that it was then legitimately one for the consideration of the jury. They were the exclusive judges of the testimony and the credibility of the witnesses; they would have had the right, if they found the evidence fabricated to conceal the real motive for the killing, to disregard the testimony as to the insulting language and conduct of Phillips to and concerning Gray's wife, as testified by Gray and Mrs. Gray. If they had seen proper to have done so, then the question as to whether Gray provoked the difficulty would have been a legitimate subject of inquiry and consideration. But, as said by Judge Ramsey, they did not reject the testimony of Gray and his wife as to the insulting language and conduct, they believed it; and it is only upon that theory that they could have acquitted of murder and found him guilty of manslaughter. Judge Ramsey thus wrote: "The verdict of the jury of necessity affirmed their belief that deceased had been guilty of insulting conduct towards appellant's wife. There was no other issue or ground upon which they were justified in finding him guilty of manslaughter." 55 Texas Crim. Rep., 108.

The whole opinion of Judge Ramsey, when read with reference to the facts in this case, and the cited case of Shannon and other authorities should be conclusive that this court was then of the opinion that provoking the difficulty had ceased to be an issue in the case. If not,

then the opinion of Judge Brooks was right, and this case ought not to have been reversed upon the point on which it was reversed, as the defendant had been found guilty of manslaughter.

Gray v. Phillips, 117 S. W. Rep., 870, should not be considered as authority in this case. That was a civil action for damages brought under section 26, article 16 of the State Constitution, and articles 3017 and 3019 of the Revised Civil Statutes. The twenty-sixth section provides that such action may be brought "without regard to any criminal proceeding that may or may not be had in relation to the homicide." The question, therefore, of the elimination of malice or murder, did not and could not have arisen in that case as in this, by reason of the former trial and acquittal of the defendant for murder in the criminal case.

The charge upon provoking the difficulty with intent to kill was properly given in that case. The court was trying the case upon the theory of an unlawful killing, without reference to the grade or degrees of the offense, and was not confined to the question of murder in the first or murder in the second degree, or manslaughter, and it was wholly immaterial as to whether the killing was upon malice or not, except as to the extent of the damages sought to be recovered, if such killing was unlawful, or even unnecessary. That case recognizes fully the principle that where a defendant provokes a difficulty with intent to kill, or do serious bodily injury, such killing would have been upon malice and nothing short of murder, and refers to a great many cases of this and other courts to sustain that proposition. Justice Rice is careful in his very able opinion to keep thoughtfully in view all through the case that it devolved upon the plaintiff to show only an unlawful killing, without reference to the grade of homicide.

The principles governing in that case as to evidence are entirely different from those governing when applied to a criminal action. In that case, the question of reasonable doubt did not and could not apply. The plaintiff was required to recover upon a preponderance of evidence only, and could have recovered against the defendant for a failure to exercise the proper degree of care as well as if an intentional unlawful killing had been shown.

To hold that provoking a difficulty is in this case would be to require of me to announce the very strange doctrine that manslaughter includes malice. This I can not do, because whenever a killing is shown to have been done upon malice it is then murder, and nothing less than murder, made so both by our statutes and the common law.

The testimony shows that the necessity was occasioned by Phillips' conduct to Gray's wife to seek a meeting with Phillips for the purpose of demanding an explanation from Phillips as to his conduct towards Mrs. Gray. Under the law of this case, and it is clearly settled, Gray not only had a right, but it was his duty under the circumstances to arm himself, see Phillips and demand an explanation of him. The testimony shows that the only purpose Gray could have had in calling

upon Phillips at the time and place he did was for this purpose, and
the jury so found upon the former trial. 55 Texas Crim. Rep., 90,
108. Gray did call upon him, and demand an explanation of his con-
duct, and instead of Phillips giving him a satisfactory explanation,
he in effect admitted the insulting language, and repeated the insult
to Gray's face in a defiant manner. Gray had the lawful right to reply
to Phillips in language of the most forcible kind, Phillips being the
aggressor from the beginning. In King's case and other cases, this
court has so held, and further held that he was not required to seek
in a quiet and peaceable manner the man who had used insulting lan-
guage. Before the defendant can be deprived of his perfect right of
self-defense by reason of language spoken, he must have been the ag-
gressor, and must have intended to provoke his antagonist to do some
act that he would not have done—in other words, caused his an-
tagonist to attack him so as to afford the defendant, under a pretext
of exercising the right of self-defense, an opportunity to kill the party
so provoked. It is not all violent language spoken in the heat of pas-
sion that can be construed either in law or in fact as a provocation.
If Gray did use violent language to Phillips, the language was caused
in reply to Phillips' language. Phillips being the aggressor, Gray had
a perfect right to reply in kind, without placing himself in the attitude
of being charged with provoking the difficulty. The law itself, Phillips
having insulted Gray's wife, makes Phillips' conduct the provocation
(P. C., art. 702, sub. 4, and art. 699), and if Phillips had killed
Gray, under the circumstances, he would have been deprived of his per-
fect right of self-defense by reason of his conduct and words spoken
to Gray after his first meeting after the insulting conduct to Gray's
wife. These words are, under the statute (art. 702, Penal Code), the
provocation to reduce the offense from murder to manslaughter, and
this is the only kind of language (insulting language to a female rela-
tion) known to the law as being sufficient within itself to reduce the
homicide from murder to manslaughter, and is, under article 599, suf-
ficient within itself "reasonably calculated to provoke a breach of the
peace." Judge Ramsey, in the Akins case, 56 Texas Crim. Rep., 324,
119 S. W. Rep., page 863, quoting from Judge Brooks' opinion in
McAnear's case, 43 Texas Crim. Rep., 518, 67 S. W. Rep., 117, and
applying it to the Akins case, says: "That deceased, when accosted in
respect to the alleged slanderous statements concerning his wife, ad-
mitted that he had insulted her; this would constitute a new and ag-
gravated insult and one doubly calculated to inflame his mind to such
a degree of passion as to render it incapable of cool reflection." In
other words, this language is sufficient to "provoke a difficulty," there-
by making Phillips the aggressor at the time of and immediately pre-
ceding the homicide to such an extent that if Gray had immediately,
without replying to him, shot and killed him, to have made Gray guilty
of no higher offense than manslaughter. Phillips having used the in-

sulting language, and thereby made himself the aggressor, Gray had the right to reply in kind. Had Gray been present when Phillips insulted Mrs. Gray, and the language was then used by Phillips, it would not have been debatable that Phillips provoked the difficulty. The same rule applies by statute to the first meeting after information received by Gray. He not only had a right, but it was his duty in protecting the honor of his wife, to denounce such conduct then and there by the use of the most expressive and forcible language, without the imputation of provoking the difficulty. The law gives him this perfect right and imputes to Phillips' language a certain legal effect by which he is made *ipso facto* the aggressor. Blackstone says self-defense is the "defense of one's self, or the mutual and reciprocal right of such as stand in the relation of husband and wife, parent and child, master and servant. In this case, if the party himself, or any of these his relations, being forcibly attacked in his person or property, it is lawful for him to repel force with force, and a breach of the peace that happens is chargeable only upon him who began the affray. The law in these cases respects the passion of the human mind, and when certain violence is offered to a man himself, or those to whom he bears a near connection, makes it lawful in him to do himself that immediate justice to which he is prompted by nature and which no prudential motives are strong enough to restrain. It considers that the future process of law is by no means adequate remedy for injuries accompanied with force, since it is impossible to say to what wanton lengths the rapine and cruelty, outrages of this sort might be carried, unless it were permitted a man immediately to oppose one violence with another." (Cooley's Blackstone, 3d book, pp. 2 and 3.) In fact, the character of language used by Phillips to Gray in law carries more legal force (or violence) with it than if he had made "an assault and battery" so slight as to show no intention to inflict any injury upon Gray, because article 701, Penal Code, says: "Insulting words or gestures, or an assault and battery so slight as to show no intention to inflict pain or injury, or to injure the property unaccompanied by arms, are not adequate cause," to reduce to manslaughter, while insulting words or conduct of the person killed toward a female relation of the party guilty of the homicide is, under article 702, Penal Code, sufficient provocation within itself to reduce the offense to manslaughter. Force is a matter of law, and must be applied as the law dictates. It can neither be greater nor less than the law makes it. If the law has made "insulting language to or concerning a female relation" force (or violence), and of a higher degree than assault and battery so slight that show no intention to inflict pain or injury, and has placed such language or conduct upon a plane as to force or violence with "an assault and battery" by deceased causing pain and bloodshed (art. 702, Penal Code), then it is the duty of this court to accept and construe the term "force" as the lawmakers have written. Now, when Gray accosted Phillips, and demanded to know why

·he treated Nora as he did, Phillips did not deny having used insulting language, but admitted, and told Gray that he would not take any of his abuse. At the time of this first provocation, on the part of Phillips, he was standing near Gray with an open knife in his hand, prepared to make good his implied threat. The law denounces this language and conduct as a provocation and calculated to create a breach of the peace. Blackstone says, "that breach of the peace which happens is chargeable upon him only who began the affray." If Gray had a right to arm himself, seek Phillips and demand an explanation of him, why he insulted Nora, and doing so the insult was repeated, then unquestionably the provocation and the breach of the peace following is clearly upon Phillips. The law puts it there. Gray was within his lawful rights. Phillips was not. Gray could not have been prosecuted and lawfully convicted under article 599, Penal Code, for using language calculated to provoke a breach of the peace. Why? Because Phillips was the wrongful aggressor, and Gray was simply repelling force with force, and the penalty is against the only one who was the aggressor. It must be kept in view that the appellant, when again placed upon trial, was being tried for manslaughter only, and not for murder in either degree—murder having been eliminated by the first trial. The opinion now complained of by appellant is so at variance with the former opinion of this court when the case was before us on the first appeal that both certainly can not be the law of this case. I therefore think that the last opinion by this court is subject to the criticism urged by appellant.

I have so far considered this case upon the idea that the question of provoking the difficulty is not in the case, and should not have been submitted in any form. I will now consider the other assignments of error complained of by appellant, treating them as if the question of provoking the difficulty was in the case.

Second. That paragraph thirteen of the court's charge is not the law applicable to this case.

That paragraph is as follows: "You are instructed that if you find from the evidence in this case beyond a reasonable doubt that the defendant went to where the deceased was killed and by his own wrongful act (if any there was) brought about the necessity of killing the deceased, Will Phillips, and that defendant provoked a difficulty with said Will Phillips with the wrongful and wilful intention to take the life of deceased or inflict upon him serious bodily injury, and you further find that the defendant, knowingly and wilfully and with the specific intention, and with a view thereto, used toward deceased language or did acts, or did both, for the purpose of causing deceased to attack defendant, that he might have a pretext to kill or inflict upon deceased serious bodily injury, and you find that such language or conduct or acts on the part of the defendant (if any such there was on the part of defendant) was reasonably calculated to bring on the difficulty and cause the deceased to attack the defendant, and you

further find from the evidence beyond a reasonable doubt that the defendant in pursuance of a wrongful, wilful and previously formed design to provoke a difficulty with the deceased for the purpose and with the intention of killing him or inflicting upon him serious bodily injury, and you further find from the evidence beyond a reasonable doubt, that intentionally and with a view thereto, he shot with a pistol and thereby killed deceased, then you are instructed that the defendant's plea of self-defense will not avail him in this case, and if you so find from the evidence beyond a reasonable doubt the homicide would be manslaughter under the law herein given you in this charge."

This, under article 708 of the Penal Code, is not manslaughter, but murder, made so by the statute itself, which reads: "Though the homicide may take place under circumstances showing no deliberation, yet if the person guilty thereof provoke a contest with the apparent intention of killing or doing serious bodily injury to the deceased, the offense does not come within the definition of manslaughter." This is but a statutory declaration of the rule as to malice, as it is under the common law. Malice is that which makes murder of a culpable homicide and distinguishes it from all other species of homicide. Judge Ramsey, in his opinion, treats this charge, or rather so much of it as speaks of manslaughter, as "surplusage." The doctrine of "surplusage" has no application whatever to a charge of the court, especially when a charge contravenes a plain statutory provision and is harmful to the defendant. The very object of articles 715 and 716 of the Code of Criminal Procedure is to prevent and prohibit the court in his charge to the jury using any "surplusage" as the court is required to state plainly the law applicable to the case, and to state it in such a manner as not to arouse the passions of the jury or unduly impress them as to his views or opinions as to the weight of the evidence. The facts being exclusively for the consideration of the jury, this is a novel application of the doctrine of surplusage, to say the least of it.

This paragraph of the charge injected into the case, the question of malice for which the defendant has been tried and acquitted, this certainly was hurtful to the defendant, and had a tendency to wrongfully impress the jury as to an issue not in the case, and to arouse their passion against the defendant, thereby in all probability causing them to visit the extreme penalty of five years upon the defendant. Reinhardt v. State, 60 Texas Crim. Rep., 662, 133 S. W., 265. The defendant was upon trial for manslaughter, and it was his right to have the law of manslaughter and not murder applied to his case. This the court did not do; but gave to them an instruction substantially as to murder and called it manslaughter. In other words, they tried him for murder, of which offense he had been acquitted, and convicted him of manslaughter. This, the Constitution of this State prohibits. The court could, with as much right and propriety have given

the statutory definition of murder and called it manslaughter as the giving of this paragraph and calling it manslaughter. Either would have been an evasion.

No one will for a moment claim that the lower court in the face of the defendant's former acquittal could have again placed him upon trial for murder. Bill of Rights, sec. 14, C. C. P., art. 762.

The defendant has not denied the right of the State to introduce all of its testimony in this case, whether the same be "murder evidence" or not. No such question is raised in this case. Upon the contrary, the appellant in his briefs, oral and written argument, and in his motion for rehearing, states that he is not raising or presenting such a question; that no such question was presented below by any objection to testimony, bills of exception, special charges or motion for a new trial. So far as this case is concerned, no effort has been made as was sought in the Cornelius case to acquit the defendant of manslaughter, because the facts make a case of murder and not manslaughter. Upon the contrary, it is claimed by appellant that the facts taken in their most favorable view for the State make no higher offense, if any, than manslaughter.

As the appellant was on trial for manslaughter and manslaughter only, the court should have submitted the law applicable to such a case, and not have confused it by abstract propositions applicable to some offense for which the defendant was not being, and could not be, tried. Again, having given the quoted charge, it is made the more harmful because the converse of the proposition, to wit: if he provoked the difficulty, but only to inflict less violence than death or serious bodily injury, was not given.

Then again, if it be conceded that the court ought to have submitted the question of provoking the difficulty to the jury at all, this charge is radically defective, as it makes the whole question depend alone upon the intent of the defendant without any reference to the effect such intent, words, acts or conduct of the defendant may have had upon the deceased in causing him to make an attack upon the defendant by reason of such words, acts or conduct. It is not sufficient that the defendant may have intended to provoke the difficulty and may have used words and done acts calculated to provoke the deceased, but the effect of such provocation must have caused the deceased to attack so as to afford the defendant a pretext to kill or do serious bodily injury. This is omitted from the charge of the court, and therefore error.

Third. The court having given paragraph thirteen, appellant in the court below sought to modify its hurtful effect by requesting special charge No. 6. This special charge is as follows:

"You are further charged as a part of the law applicable to this case that if you believe from the evidence that the defendant's wife informed him of the insulting language or conduct towards her by the deceased, and that he believed the same to be true, and that de-

fendant armed himself and sought a meeting with the deceased for the purpose of demanding an explanation from the deceased of such language or conduct, and when they met the first time, after defendant had been informed of such insulting language or conduct, if he was, the deceased failed to make any explanation, then if you believe it was simply the intention and purpose of defendant to curse and abuse the deceased on account of such language or conduct, and that it was not his purpose to provoke a difficulty with the deceased, in order that he (defendant) might have a pretext 'to kill the deceased, or to inflict upon him serious bodily harm, and you believe from the evidence that the deceased, in resenting such cursing and abusing of the defendant, if any, made an assault upon the defendant with a knife, or it reasonably appeared to the defendant that it was the purpose of deceased to make an assault upon defendant with a knife, calculated to inflict upon defendant serious bodily harm or death, and the defendant fired and killed deceased in self-defense, then you can not convict him of manslaughter."

While this charge may not be technically correct, it is sufficient to call the court's attention to the issues involved, and the court should have instructed upon this theory. The defendant's wife had been grossly insulted by the deceased, and when the defendant called upon him for an explanation no explanation was given, but the deceased in effect admitted in a defiant manner the insulting language and conduct. This ordinarily would be within itself sufficient to arouse the anger, rage and resentment of any man. At all events, it was a question of fact. If, therefore, the evidence raised the issue (and we think it did) as to the purpose and intent of the defendant to reply in kind and return insult for insult, and not to provoke a difficulty for the purpose of causing the deceased to attack him so as to afford him a pretext whereby he could kill the deceased, or do him serious bodily injury, the court should have, under appropriate instructions, submitted the question to the jury, the court having submitted paragraph thirteen. This special charge was refused, and this theory was nowhere submitted. It is said in Thornton v. State, 65 S. W. Rep., 1105, where a similar question was presented, "the law of provoking the difficulty is predicated upon the intent with which the defendant commits the act, and upon the reasonableness of the provocation." And in Reinhardt's case, supra, it is said, "first, any fact that would lead to an acquittal becomes of the greatest importance to an accused, and the proper and correct enforcement of the law, and the elimination of which fact would be seriously detrimental to the enforcement of the law as well as the legal right of a party accused of crime. The omission of a proper charge in regard to an extenuating circumstance should be, and is always held to be, reversible error. This proposition of law is not to be questioned. The second proposition is, that whether it leads to an acquittal or not, if the fact leads to, or would have the effect of probably minimizing the punishment below the maximum,

then it is of equal importance as if it would lead to an acquittal." These two and other cases of kindred import are conclusive of this question. ·

Fourth. Appellant complains of the fourteenth paragraph of the court's charge, which is as follows:

"If, on the other hand, you find the defendant called the deceased out to interrogate him concerning language and ' conduct attributed to deceased concerning defendant's wife, and with no intention to kill or inflict on deceased serious bodily injury, then you are instructed that defendant's right of self-defense would in no way be limited, and if under such circumstances the deceased attacked defendant with a drawn knife or otherwise, or it reasonably appeared to the defendant that such was the intention of the deceased, then the defendant would have the right of self-defense as explained to you in this charge."

By this charge the burden of proof is shifted to the defendant from the State. The jury may not have been able to have found as a fact that the defendant called the deceased out and interrogated him concerning language, etc., while they may have had a reasonable doubt as to whether he did or not. The vice, therefore, of this charge, is in failing to instruct the jury that if they had a reasonable doubt as to those facts to acquit the defendant, while the charge itself requires the jury to find affirmatively such facts before they could acquit. See Fuller v. State, 54 Texas Crim. Rep., 454, 113 S. W. Rep., 541; Vann v. State, 45 Texas Crim. Rep., 434, 77 S. W. Rep., 813; Jones v. State, 13 Texas Crim. App., 1; Dent v. State, 46 Texas Crim. Rep., 166; Shambeger v. State, 24 Texas Crim. App., 433; Dubose v. State, 10 Texas Crim. App., 230; Humphrey v. State, 18 Texas Crim. App., 302. The defendant sought by special charges 1 and 10 to correct paragraph fourteen, special charge No. 1, being as follows: "In this cause, you are further instructed that although you may believe from the evidence that the language used by the defendant towards deceased, if you believe he used such language, was calculated to provoke deceased to combat, still the defendant would not be deprived of his perfect right of self-defense under the law unless you further believe beyond a reasonable doubt that it was the intention on the part of the defendant to provoke the deceased to such combat, and that it should have that effect." No. 10 is as follows: "The burden of proof which rests upon the State to overcome the presumption of innocence and establish the guilt of the defendant by legal and competent evi-dence to the satisfaction of the jury beyond a reasonable doubt never shifts from the State to the defendant, and the State must establish every necessary and material issue in the case to the satisfaction of the jury beyond a reasonable doubt, and the defendant is not required to prove his innocence." Both of these charges were refused by the court, and the refusal to give these charges were duly excepted to in defendant's motion for a new trial. I do not find in the record where there is any exception taken *eo nomine* to paragraph fourteen of the

court's charge, but these special charges having been requested by the defendant and having been refused by the court, and such refusal having been excepted to on motion for new trial cures the failure of appellant to except in motion for new trial to paragraph fourteen directly.

Fifth. Appellant complains of the court's charge upon the question of self-defense, and submits this proposition: "Where the evidence adduced tends to show that deceased when shot was from six to twelve feet distant and approaching defendant for the purpose of attacking him with a drawn knife, it is prejudicial error for the court to instruct the jury upon the right of defendant to kill in case the deceased *had made an actual attack on him,* and thus turn the issue of self-defense upon a theory not based upon the evidence."

This assignment of error, we think, is well taken. This was not a case of actual danger, but of apparent danger only. The law as to apparent danger should have been submitted fully as claimed by appellant. See Brady v. State, 65 S. W. Rep., 521; Seeley v. State, 43 Texas Crim. Rep., 66, 63 S. W. Rep., 310; Phipps v. State, 34 Texas Crim. Rep., 560, 31 S. W. Rep., 397; ib., 657, 35 Texas Crim. Rep., 2; Shannon v. State, 28 S. W. Rep., 687.

Sixth. The appellant assigns as error the refusal of the court to permit him to show on the trial of the case that the autopsy ordered by the court was at the urgent request of the defendant, and that in order to procure the same the defendant, of his own volition, offered to and did pay all the expenses incident to such autopsy, and the refusal of the court to permit the defendant to show these facts as is shown by the bill of exceptions No. 5.

I think the court was in error. The defendant claims that at the time he shot the deceased, and when the first shot was fired, the deceased was advancing upon him in a threatening manner with an open knife in his hand, and that at that time he shot the deceased in front. Three wounds are shown to have been inflicted, one on the side of the head just above the ear, one just below the right shoulder blade ranging diagonally through the body, coming out near the left nipple, and one in the back lodging in the front part of the body near the deceased's right groin. These last two shots were clearly disclosed, both as to entrance and range, by the autopsy. The defendant's theory is that the first shot entered from the front, and if defendant's testimony is true, as there were only three shots fired, the one in the head above the ear must have been first, though the defendant claims, and has always claimed, that he did not know, and does not know which was the first shot that struck the deceased, though as said before, the deceased was advancing upon him. It therefore became a very material inquiry as to the good faith and belief of the defendant as to the position of the deceased when the first shot was fired. The fact that the autopsy was made at the request of the defendant, and that he paid the expenses thereof, is a strong circumstance bearing upon the good faith

and belief of the defendant as to the position of himself and the deceased when the first shot was fired. I therefore think that this testimony ought to have been admitted.

For the errors herein pointed out and discussed this case ought.to be reversed and remanded for a new trial. I enter my dissent.