## Langston Burton v. The State.

No. 15159. Delivered October 12, 1932.
State's Rehearing Denied January 4, 1933.
Reported in 55 S. W. (2d) 813.

The opinion states the case.

*Clifford L. Stone,* of Henderson, and *Gentry & Gray,* of Tyler, for appellant.

*V. W. McDavid,* Criminal District Attorney, and *H. F. Weldon,* Special Counsel, both of Henderson, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Conviction is for murder; punishment assessed at two years in the penitentiary.

There is only one count in the indictment, which, omitting the formal parts, charged the appellant as follows: "That he did then and there unlawfully and voluntarily and with malice aforethought kill Jerry Allen with an automobile, said murder being so committed by the said Langston Burton while he, the said Langston Burton, was then and there engaged in the perpetration of the crime of driving and operating a motor vehicle, to-wit, an automobile, while under the influence of intoxicating liquors, in, along and upon the public highway there

situated leading from the town of Henderson to the town of Minden."

The evident intention of the indictment was to charge appellant, while intoxicated, with driving and operating an automobile on a public highway and while driving said automobile accidentally killed Jerry Allen by then and there striking and colliding with the said Jerry Allen.

The deceased was a child seven years of age and he and other companions were returning from school, traveling along the highway. At the time he was struck by the automobile, he was off the highway and in a ditch to the side of the highway. The state's testimony further showed that the automobile of the appellant, with him driving, was seen approaching at a rapid rate of speed going at a rate of from 30 to 35 miles an hour, and, when nearing the place where the deceased was, the car ran off the roadway down the embankment striking the deceased, and inflicting injuries as a result of which he later died. There was evidence that appellant drank some whisky a short time before the accident and was under the influence of intoxicating liquor at the time of the accident. Immediately after the accident, the appellant took the child to the hospital.

The defensive theory was that a flat tire on the automobile caused it to swerve and go into the ditch and evidence was offered to the effect that there was a flat tire after the accident on the right-hand front wheel and the casing on that wheel had blown out, and that a blow-out on the right front wheel caused the car to swerve to the right, the direction it went when it left the road. Appellant also offered evidence to show that, at the time of the accident, he was not under the influence of intoxicating liquor. The appellant did not testify as a witness in the case.

The learned trial judge in his charge to the jury defined the word "voluntarily" as used in his charge and also "malice aforethought." The trial judge also instructed the jury in paragraph 11 of his charge that, unless they believed from the facts and circumstances in the case that the appellant was prompted by and acted with malice aforethought at the time the offense was committed, if committed, that they would not assess the punishment at a longer period of time than five years confinement in the penitentiary.

In paragraph 12 of said charge, he further instructed the jury that if they believed beyond a reasonable doubt that the appellant did intentionally, wilfully, and voluntarily, with malice aforethought, kill Jerry Allen by then and there striking

and colliding with the said Jerry Allen with an automobile, and that they should further find and believe from the evidence beyond a reasonable doubt that the said Langston Burton was then and there at the said time driving and operating a motor vehicle, to-wit, an automobile, while under the influence of intoxicating liquor in and along a public highway there situated leading from the town of Henderson to the town of Minden with the specific intent then and there to kill the said Jerry Allen, said killing was done with malice aforethought, as that kind of malice has hereinbefore been defined, and that said automobile, considering the manner of its use, was a deadly weapon, and the said offense, if any, does not come within the definition of negligent or excusable homicide as will hereinafter be defined, then they would find the defendant guilty of murder and assess his punishment at death or by confinement in the penitentiary for life or any term of years you see proper not less than two; if they do not so believe, then, if they have a reasonable doubt as to whether the defendant is guilty of murder, they would acquit him of that offense.

The court further charged in paragraph 13 that, if from the testimony in this case "you should have a reasonable doubt as to whether the defendant at the time and place as charged in the indictment, while driving an automobile down a public highway leading from Henderson to Minden was under the influence of intoxicating liquor at the time Jerry Allen was struck by said automobile, then you will acquit the defendant of murder and consider whether the defendant is guilty of negligent homicide either in the first or second degree." The court also charged upon negligent homicide, both in the first and second degree.

Appellant at the proper time directed a number of exceptions to the court's charge. Under the evidence in this case, the judgment can be sustained only by virtue of article 802 of the Penal Code, which makes it a felony for any person to drive or operate an automobile on any public road or highway in this state, while such person is intoxicated or in any degree under the influence of intoxicating liquor, and by virtue of article 1242, which provides in substance that when one, in the execution of or in attempting to execute an act made a felony by law, shall kill another, though without an apparent intention to kill, the offense does not come within the definition of negligent homicide. Also by virtue of article 42, P. C., which in substance provides that, if anyone executing a felony shall through acts alone do another act which is voluntarily done, he

shall receive the punishment affixed for the felony actually committed.

If it should be conceded that the indictment in this case is sufficient and that the evidence introduced in this case against appellant was admissible thereunder, then does the charge of the court assume a charge on a theory not raised or embraced by the evidence, as contended for by the appellant? There is absolutely no evidence in this case which would directly or indirectly tend to show that the appellant drove the car against the deceased voluntarily or with malice aforethought. The mere fact that the appellant may have been intoxicated at the time of the accident cannot be taken alone as proof of the fact that he drove said car against the deceased voluntarily, much less with malice aforethought.

Article 658, C. C. P., provides: "In each felony case the Judge shall before the argument begins, deliver to the Jury, except in pleas of guilty where a jury has been waived, a written charge, distinctly setting forth the Law applicable to the case."

In the case of Stewart v. State, 15 Texas App., 598, in construing article 677 of the C. C. P., which then provided that, after the argument of any criminal case is concluded, the judge shall deliver to the jury a written charge in which he shall distinctly set forth the law applicable to the case, Judge Hurt used the following language: "Applicable to what case? Any and every case which might be presented by any state of facts admissible under the indictment? Most evidently not. But clearly 'applicable to the case' charged in the indictment and presented by the evidence. By this article the charge of the court is rigidly restricted; first, to the allegations in the indictment; and second, to the case made by the evidence—that evidence which is admissible under the allegations of the indictment."

We quote from Lynch v. State, 24 Texas App., 350: " 'However correct the principle of law may be in the abstract, it is error to give it in charge where there is a total want of evidence to support the phase of the case to which it is applied.' Conn v. State, 11 Texas App., 390. 'If the court assumes and charges on a theory not raised or indicated by the evidence, it is radical error and fatal to a conviction.' Ross v. State, 10 Texas App., 455; Taylor v. State, 13 Texas App., 184; Hardin v. State, 13 Texas App., 192; Stewart v. State, 15 Texas App., 598. 'A charge should be confined to the facts in evidence.' Boddy v. State, 14 Texas App., 528; Mayfield v. State, 23 Texas

Crim. Rep., 645." See, also, Scoggin v. State, 100 Texas Crim. Rep., 389.

The charge as we view it assumes a theory totally unsupported by the facts, is strongly adverse to appellant, and it burdens his case with a strongly criminative matter not connected or shown by the evidence and reasonably conveys to the minds of the jury the impression of the court that appellant voluntarily and with malice aforethought deliberately ran into the deceased. The defendant is always to be tried on the evidence adduced and not on facts not testified to, and the charge must conform to the proven facts. See Reeves v. State, 34 Texas App., 483.

We do not mean to hold that, if the trial court assumes and charges on a theory not raised or indicated by the evidence, such charge would warrant a reversal in every case. In the present case, however, considering the evidence, the transgression of the rule was prejudicial to the appellant.

The judgment reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE. — Without reviewing seriatim the matters set up in the state's motion for rehearing, we express the belief that the indictment in this case is sufficient on the theory that an averment of a killing upon malice aforethought includes one without such malice, but it is difficult to see how the jury could have escaped confusion in their determination of the issues involved, in view of the way in which the case was submitted in the charge. There was no evidence supporting any conclusion that the killing was upon malice aforethought, or that appellant intentionally or wilfully struck deceased with an automobile.

The killing was the result of an accident, and the real question involved is, was the accident caused by the appellant being under the influence of intoxicating liquor at the time, or did it result from some other cause which would or might reasonably have brought about said accident, independent of appellant's condition, this being a fact issue for the jury upon proper submission by the court. In other words, the mere fact that a man is under the influence of intoxicating liquor while operating a

car on a highway, this being in and of itself the commission of a felony, should not in reason and common sense make him guilty of murder, if he be operating the car correctly, and as a man should who was not under the influence of intoxicating liquor, and an axle break, or a cotter pin shear, or a wheel run off, or a blow-out occur without any casual connection between these and the manner or means of operation of the car as a result of appellant's condition, and in such case a death result. Illustrations might be multiplied of conditions in which death might occur from some accident not arising from or caused by the drunken condition of appellant or by the manner of his operation of the car.

The testimony in this case beyond question raised the issue as to whether the car operated by appellant left the pavement, went into a ditch and killed the child, as a result of his being under the influence of intoxicating liquor, or as the result of a blow-out of the right front casing, not caused by or brought about by the appellant being under the influence of liquor. The boys who witnessed the accident said appellant was not driving over thirty-five miles an hour. Parties who were at the scene immediately after the accident said they observed where the car left the pavement and turned over into the ditch, and there was a broad flat track such as would be caused by a casing which had been blown out. Parties who saw appellant's car immediately after the accident testified that the right front casing was blown out, and the man who was called upon to fix the flat after the accident testified to the same thing.

There is no defense or excuse for the operation of a car upon a public highway by one under the influence of intoxicating liquor, and the rights of all people to the free and safe use of public highways should be carefully observed and rigorously maintained, but the highest and best guarantee of all our rights and liberties is found in adherence to the requirements of the law. Safety and security do not dwell where the law is not faithfully, fairly, and impartially administered. The comprehension of article 42, P. C., is great and its terms might be made oppressive if its purpose and intent be not safeguarded by proper construction. We think it worth while to again quote said article, which is as follows: "One intending to commit a felony and who in the act of preparing for or executing the same shall through mistake or accident do another act which, if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed."

We have carefully examined every case governed by this

article reported in the volumes of the opinions of this court and of the Supreme Court when it had criminal jurisdiction, and all down to the Norman case, hereinafter referred to, seems to be cases in which the thing actually done by accident or mistake by the accused, were those like that which he had intended to do in the commission of a felony, or were those which might ordinarily result from the acts of the accused in furtherance of his original intent, or preparatory acts in the execution of such intent to commit a felony, such as a man shooting at one with intent to kill and killing another, or assaulting one with intent to murder and accidentally striking another, etc. Careful examination of the article above quoted makes plain that there must be in the mind, of the accused throughout the intent to commit a felony. "One intending to commit a felony, and who in the act of preparing for or executing the same," is the language of said article. It might be admitted, for the sake of argument, that one intending to get drunk and thereafter enter an automobile and drive it on a public highway, which would thus become a felony, might have an accident causing death, which to characterize as murder would require a flight of imagination. Suppose A should propose to a group of his friends that they all drink some liquor and then drive to town in his car. They agree. A reaches up on a shelf to get a bottle of whisky, not knowing that some one had put poison in the liquor. He gives it to his friends. They drink it and die. While this might be characterized as the result of a mistake and in the course of preparation to execute a felony, it would hardly be contended that A was guilty of murder. Again suppose A and his friends after partaking of the liquor should start down to the street where his automobile is awaiting to drive on a highway, and as they go downstairs A should stumble and fall against B, the latter having in his pocket a pistol which, as the result of the accidental fall, is discharged and kills C. Would it be contended that this by any kind of reasoning or logic should be called murder? We think not. Such conclusion seems incredible. As well say that, if the car of a man under the influence of liquor and in operation upon a highway, be struck by lightning and as a result the car become unmanageable and the death of some party resulted, the driver could be held guilty of murder.

In Norman v. State, 52 S. W. (2d) 1052, we said: "It is not enough that he be intoxicated while driving his car on such highway, but his such driving must cause the death of the other party."

In the Norman case the accused claimed that, even though he might have been under the influence of intoxicating liquor, he was driving his car properly and on the proper side of the road when another car ran into his, causing the death of an occupant of said other car. We further said in that case: "It cannot be sound law that one who drives his car correctly, and ·on the proper side of the highway, and in a proper manner on such public highway, even though he be then intoxicated, shall be convicted for murder if death result wholly from the carelessness or negligence of the driver of another car which collides with that driven by the accused."

In the case before us, and any such case, the trial court should submit to the jury the issue as to whether the accident or mistake resulted from the fact of the driver being under the influence of intoxicating liquor, or from a cause or causes not reasonably growing out of, or resulting from such condition, and the jury should be told to acquit if the latter condition be true. If because of a blow-out the car leave the road and go into a ditch and strike some person and cause death, it would be a fact issue for the jury to pass upon as to whether the rate of speed or the manner of driving or handling the car, resulting from the fact that the driver was under the influence of intoxicating liquor, caused or contributed to cause the blow-out. So also of any kind of an accident resulting from the condition of the driver of a car by an intoxicated operator, when death results from an accident.

Also in a case such as the one before us, when the issue as to whether the accused was under the influence of intoxicating liquor was sharply contested, and where his intent would necessarily be involved, and the degree of his guilt, if any, be affected and measured by his intent, coupled with his act, the trial court should give to the jury some definition of the term "under the influence of intoxicating liquor" such as that the jury must find and believe that the accused was under the influence of such liquor to an extent that it would impair his ability to care for himself, or to guard against harm to others, in order to make him criminally liable.

The states motion for rehearing will be overruled.

*Overruled.*