## LEM F. JOHNSON V. STATE.

No. 24091. November 10, 1948.
Rehearing Denied January 26, 1949.
Request for Leave to File Second Motion for Rehearing Denied
(Without Written Opinion) February 16, 1949.

60

*Pat Beadle,* Clarksville, for appellant.

*Ernest S. Goens,* State's Attorney, Austin, for the state.

GRAVES, Judge.

Late in the afternoon of September 19, 1947, appellant, eighteen years of age, and five other boys left Clarksville, Texas, where they resided, in appellant's black two-door, 1935 model Ford automobile, to go to Texarkana, Texas, to drink beer. The party consisted of appellant, Billy Joe Ward (deceased), A. D. Fowler, Carl Carson, Buddy Carson, and Hubert Caldwell. Upon arriving at Texarkana, several beer taverns were visited at each of which places beer was consumed by some, or all, members of the party. During this time, Elmer Ray Collins joined the party. A short time before midnight, Reneau, a deputy sheriff, saw them at a beer tavern and forbade appellant to drive the automobile further because he was not sober enough to drive. Reneau told them they could leave, provided Collins, who appeared to him to be sober, did the driving. The boys left to go home, with Collins driving the car. A short way out on the highway, appellant and Caldwell got into an argument. The automobile was stopped and appellant and Caldwell engaged in a fight. The fight was stopped, whereupon appellant and Fowler got into the car and drove away, leaving the other boys by the side of the road. There was testimony to the effect that appellant and Fowler left to go back and drink more beer. To this point the facts are not in material dispute.

Fowler was jointly indicted for the same offense for which appellant was upon trial; he was, therefore, an accomplice witness, as a matter of law. He testified as a state's witness. The effect of his testimony was that after he and appellant drove away and left the other boys by the side of the highway, they went, with appellant doing the driving, west up the highway about a half-mile, and turned around and started back east; they met the boys and continued on east about a mile or mile and a half to a filling station, at which point they turned around and started back, went up the highway and in the direction of the boys. As to what then happened, we quote from Fowler's testimony, as follows:

"We overtook them right there at the school building on the southwest corner, the Hooks school house just right out of the City of Hooks. When we overtook them, Johnson was driving so fast I figured he could not stop, and if I remember right there

was a car going east and we were going west, and these boys were walking on the side of the road like anybody would; and he didn't hit this other car but whipped in there and hit those boys. He whipped clear off the pavement, off to the right, and hit them . . . When I first say those boys, including Billy Joe Ward, as we came up behind them from the east, I saw them before we hit them. This other car I was talking about, I don't think our car had to swerve to keep from hitting it. If we had stayed right on the paved portion of the highway going west, we would have met and passed that car. I would say these boys were about twenty-five or thirty yards ahead of us when I first saw them and we came up from behind them. When we swerved there and hit them, the Johnson boy didn't say a word. At that time I would say we were going between forty and fifty miles an hour, and Johnson didn't say anything but kept on going. We went on up to Hooks and turned around and came back. Johnson was driving all this time. As we came on back, I tried to get him to stop and he wouldn't stop,—that is at the place where the boys had been hit. When I tried to get him to stop, he said, 'They ain't hurt bad.' We went on down to Tidwell's and drink a beer after he hit these boys."

As they were leaving Tidwell's, Reneau arrested appellant for driving while intoxicated, placed appellant in the car with him, and had Fowler to follow in appellant's car. Reneau, with appellant under arrest, drove up the highway to the scene of the collision.

It should be here stated that Fowler, upon redirect examination, testified that, just before the car hit the boys, "Johnson said, 'There is those damn boys now;' and when he said that he swerved the car to the right and hit the boys there. I saw the boys and recognized them as we hit them."

In addition to Fowler's testimony, the state introduced appellant's confession, which, after the warning, reads as follows:

"My name is Lem F. Johnson and I live at Clarksville. Yesterday afternoon, September 19th, 1947, Carl Carlson, Buddy Carlson, Hubert Caldwell, A. D. Fowler and Billie Joe Ward and myself decided that we would go to Bowie County and get some beer. We came in my car, and I drove to New Boston where I let Billy Joe Ward drive. We went to the Brass Hat where we stayed about 20 minutes and drank 2 bottles of beer. We then went to the Oak Grove Grocery Store where I drank one bottle of beer and ran out of gas. After we got some gas, we went down to the Spot Cafe where we drank two bottles of beer each.

We went to Texarkana from the Spot and went to some cafe over across a railroad track—I don't know the name of it—and tried to get some beer but couldn't so we went back to the Spot. We got back to the Spot about fifteen minutes until 10:00 o'clock P. M. We stayed there until about fifteen minutes until 11:00 o'clock when the Deputy Sheriff told us we'd better leave. We all went out to the car. I started to drive off, but Mr. Reneau, the Deputy Sheriff, said that I looked a little drunk to be driving and wouldn't let me drive. I got in the back seat then and either Carson or the fellow we picked up there at the Spot was driving. Hubert Caldwell and I got to arguing and about at the Blue Streak Lodge, we got them to stop the car and we got out to fight. Everybody except Fowler got out of the car and we fought about a minute. We were pretty mad, and I was mad, so I just got in the car and drove off with Fowler in the car with me. I drove about a half mile on the other side of Hooks and turned around and went back East up to the Tavern, I believe it was, and stayed about 5 minutes and turned around and went back, starting home to Clarksville. Up about the school house we overtook the other boys and ran into two of them. The left front bumper of the car hit Ward and it was the running board on the left fender that hit Carson. I was going around 40 or 50 miles an hour when I hit them. I saw them before I hit them. I was about 20 feet from them when I saw them and swerved the car to the right. I saw and recognized these boys when I hit them, and knew that I hit them. I did not stop but kept on going toward home until I got to Hooks where we turned around this side of Hooks and went back East for the purpose of going back to the Tavern and getting a beer. We went down to the Tavern and stayed a little while and then started home. On the way home, Deputy Sheriff Reneau stopped us and arrested me for drunk driving. I didn't at any time stop to help these boys that I hit nor to offer to help them. I had had about six or seven bottles of beer that night, and was under the influence of beer when Mr. Renau stopped me for drunk driving.

"(Signed) LEM F. JOHNSON"

Upon the trial of the case, appellant repudiated the inculpatory features of the confession. He denied that he was the driver of the automobile that struck the boys. He denied that he was intoxicated. He testified that after the fight he and Fowler left, with Fowler driving, that they drove west up the highway a short distance, turned around and drove east, passing the boys, to a beer tavern, where they stopped and that Fowler was driving the car at that time. Upon leaving the beer tavern, appellant was driving, and about half a mile down the road Reneau,

the deputy sheriff, arrested him for drunk driving, handcuffed him, put him in his (the deputy sheriff's) car, and turned appellant's car over to Fowler, after which Reneau, with appellant in his car, turned around, went back to the beer tavern and then turned around and started back up to the highway and drove until they arrived at the scene of the collision.

The two Carson boys, as well as Caldwell, corroborated appellant in his testimony that, as appellant and Fowler drove off and left the boys after the fight, Fowler was driving the car.

Caldwell testified that Fowler was driving the car when it passed them going east after they had driven off and left the boys by the side of the road.

It was appellant's theory from this testimony that if his car struck the boys it was while Fowler was driving it and after Reneau had placed appellant under arrest and had taken him into his car.

It is significant to note that Caldwell testified:

"While we were walking along the road there, a car came along and hit the Carson boy and Billy Joe Ward. After that the Fowler boy drove back up the road going toward Texarkana, and nobody was with him. He stopped and 'hollered' and said, 'Let's go home.'"

Buddy Carson testified, in this connection, that, at the scene of the collision and before appellant and the deputy sheriff arrived, his brother openly accused Fowler of having run over the boys, by asking him, "Aren't you the g- d- s- o- b- that run over us boys?"

An examination of appellant's automobile failed to reveal any evidence of having struck the boys; no blood stains were found thereon; neither of the headlights was broken. A dent was found in the left front fender; there was testimony that this dent was put there earlier in the night.

In the collision, Buddy Carson was knocked down and Billy Joe Ward received injuries to the head, as a result of which he died the next day.

All the testimony shows that when the two boys were struck by the car they were off and to the north side of the paved portion of the highway, which would be the right side of the road traveling west.

The indictment, in the first count, jointly charged appellant and A. D. Fowler with killing Billy Joe Ward, with malice, by "driving an automobile into and causing it to collide with the person of the said Billy Joe Ward." The second count charged an offense under Art. 802c, Vernon's P. C., which makes it murder without malice for an intoxicated driver of an automobile upon a public highway to run over and kill, by accident or mistake, another person.

Appellant, alone, was upon trial and the case was submitted to the jury upon the second count, resulting in a conviction, with punishment assessed at three years' confinement in the state penitentiary.

The trial court charged the law of circumstantial evidence.

This extended statement of the facts is deemed necessary because of appellant's contention that the facts are insufficient to support the conviction.

It is appellant's contention that, under the testimony of the accomplice, Fowler, together with the confession, he is shown to be guilty of murder with malice, as charged in the first count, in that such testimony shows he either wilfully drove his automobile into and struck the deceased or that he was, at the time, operating his automobile at such a rate of speed and under such circumstances and conditions as to evidence such a reckless disregard of the rights and lives of others as to impute malice upon his part. Cockrell v. State, 135 Tex. Cr. R. 218, 117 S. W. (2d) 1105.

According to the defensive testimony, he was not the driver of the automobile that struck the deceased. Under all the facts, appellant contends that he is not and could not be guilty of violating Art. 802c, P. C., because if he wilfully killed deceased, his act in so doing was not one of accident or mistake. Appellant argues, with much emphasis, that there is no testimony in this record which shows or that would authorize a jury to conclude that the deceased came to his death as a result of an act done by appellant by accident or mistake.

Such contentions call for a construction of Art. 802c, Vernon's P. C., which reads as follows:

"Any person who drives or operates an automobile or any other motor vehicle upon any public road or highway in this State, or upon any street or alley or any other place within the

limits of an incorporated city, town, or village, while such person is intoxicated or under the influence of intoxicating liquor, and while so driving and operating such automobile or other motor vehicle shall through accident or mistake do another act which if voluntarily done would be a felony, shall receive the punishment affixed to the felony actually committed."

Said article is a part of Chap. 507, Acts Regular Session of the 47th Legislature in 1941. By that act the legislature reduced from a felony to a misdemeanor the first offense of driving while intoxicated. Having reduced said offense to that of a misdemeanor, the provisions of Art. 42, P. C. no longer apply to the first offense of drunk driving.

The legislative purpose in the passage of Art. 802c, P. C. was to make specific application to the first offense of drunk driving the constituent elements of Art. 42, P. C. In other words, by Art. 802c, Vernon's P. C. the legislature, by an independent statute, made applicable to the misdemeanor offense of drunk driving the elements of accident or mistake contained in Art. 42, P. C.

We agree with appellant that if he intentionally or with malice, express or implied, drove his automobile into and killed deceased, he would not be guilty of a violation of 802c, P. C., because the act resulting in death under such circumstances was not one done by accident or mistake. Jones v. State, 127 Tex. Cr. Rep. 227, 75 S. W. (2d) 683.

We also agree that the great weight of the state's case shows appellant guilty of murder but, as the state elected not to prosecute appellant under the count of the indictment charging that offense, we are relegated, here, to a determination if there be testimony sufficient to warrant the jury's conclusion of guilt under the provisions of Art. 802c, P. C.

It must be remembered that it is the exclusive province of the jury to pass upon the weight of the testimony. This court is authorized to set aside the jury's finding only when there is not testimony sufficient to support that finding.

If, to avoid a collision with an automobile approaching on the highway in an opposite direction, appellant, at the time being intoxicated, swerved his automobile to the right, and in doing so, accidentally or by mistake ran into and struck deceased, he would be guilty, as charged. The facts here presented are deemed sufficient to warrant the jury in so concluding. Ap-

pellant's contention that the facts do not warrant the conviction is therefore overruled.

Among the exceptions reserved to the charge was a request that the terms "accident" and "mistake" be defined. Such terms not having been defined in the statute, (Art. 802c, P. C.) they are there used in the sense ordinarily understood and mean "unintentional." They are often used in conjunction with each other and interchangeably. The phrase "mistake or accident" is found in Articles 42 and 43, P. C., as well as in Article 802c P. C., and it seems that it has never been found necessary to further define the meaning of such phrase, the words composing the phrase being common and ordinary ones, the meaning whereof being easily and readily understood.

It has been suggested that "unintentional" means the same as "mistake" under the circumstances detailed in the case of Deneaner v. State, 58 Tex. Cr. R. 624, 127 S. W. 201. However, we think either word is of such common usage as to suggest the other, and should the word "unintentional" have been used, we might have found the trial court in the position of being called upon to define the word "unintentional" as being something done by mistake, and thus find ourselves exactly where we had started, and that would be with the statute. We do not think it was necessary herein to have defined the meaning of "mistake or accident".

Under another phase of the case, appellant's contention is based upon the presumed fact that because under the facts he claims, in substance, that it is shown that the striking of and the resultant death of Billy Joe Ward was intentionally done; that appellant would therefore be guilty, if at all, of murder with malice as charged in the first count of the indictment; that count, however, having been dismissed, or at least not submitted to the jury by the trial judge, such action amounts to an acquittal of the charge of murder with malice and a conviction upon facts showing a killing with malice. He also contends that the facts show that if appellant did strike the deceased, such act is not shown to have been by accident or mistake and he should have been acquitted. The facts show that appellant himself seemed to think same to have been an accident. He testified, among other things, as follows:

"I got out of the car there at the scene of the accident. * * * When we left the scene there of the accident, Deputy Sheriff Reneau taken me to jail and put me in jail that night. After we got back down there to the scene of the accident, I told Doty

Carson to take my car on home. * * * I didn't have any trouble at any time that night with Billy Joe Ward. He and I were good friends. We had grown up together, gone to school together, and gone to the Army together. He got out of the Army about six months before I did. After we both got out of the Army we continued to run around together. I didn't have anything in the world against him to want to kill him for. * * * The last time I saw those boys on the highway that night before the accident, they were walking toward Clarksville and we were going east. * * * I did not run over the boys or strike the boys or anybody else on the highway that night while I was driving the car."

In appellant's sworn statement in the nature of a confession found in the record, his testimony differs from that given by him on the witness stand. In that statement the jury could have concluded that he saw the two boys walking along the highway and struck them, and knew that he struck them, and drove away in his drunken condition. It, therefore, appears that appellant himself offers to the jury two statements relative to the regrettable death of this boy, and it would probably have been better had the trial court submitted both counts in the indictment, there being testimony upholding either count. However, the trial court saw fit to submit only the second count for a drunken driving, and by accident or mistake the injury to Billy Joe Ward being committed by appellant. Evidently the jury could and did give credence to appellant's testimony at the trial that he had no reason to intentionally take the life of his boyhood friend and that the striking of Billy Joe Ward was not only an accident but also a mistake and unintentional upon appellant's part. On the other hand, from appellant's confession, they could have found an intentional killing.

The proposition then presents itself that where from the testimony a higher offense could have been found by the jury, or the court could have charged on such higher offense, and also a lesser offense could have been and was found by the jury, can one be heard to say that he should have been found not guilty of the lesser offense where a verdict for the greater offense could have been upheld? By analogy, we reason from the decisions of this court prior to the present statute showing an abolishment of the degrees of murder.

In the early case of Baker v. State, 4 Tex. App. 223, it was held as follows:

"We know of no authority which would suggest the idea that one charged of a higher grade of an offense which includes dif-

ferent degrees has been permitted to set aside a conviction simply on the ground that he has been convicted of a lesser degree of the offense charged in the indictment; or, when convicted of murder in the second degree, he has been heard to successfully complain that the testimony would have supported the higher offense of murder in the first degree. An inappropriate charge should not be given in any case, for the reason that such a charge would be likely to mislead and confuse the jury in their deliberations. Priesmuth v. The State, 1 Texas App. 480."

Again, in the case of Elliston v. State, 10 Tex. App. 361, it was held:

"If the proof shows a killing upon malice aforethought, a conviction of murder in the second degree should not be set aside on the ground that there was proof of express malice, and tending to establish murder in the first degree."

See other cases cited in Volume 20 of Texas Digest, page 784.

Article 753, C. C. P., subd. 9, reads as follows:

"A verdict is not contrary to the law and evidence, within the meaning of this provision, where the defendant is found guilty of an offense of inferior grade to, but of the same nature as, the offense proved."

There are many cases cited under this subdivision 9 on page 50 of Volume 3 of Vernon's Ann. Tex. C. C. P. See also High v. State, 54 Tex. Cr. R. 333, 112 S. W. 939, wherein it was held in substance that where upon a trial the state's theory proven was an assassination and the defense one of self-defense, the trial court correctly charged on manslaughter, and this court upheld a conviction therefor, although there was slight ground in the record to justify such charge. See also Carter v. State, 121 Tex. Cr. R. 493, 51 S. W. (2) 316, wherein under a charge of rape the court also charged on an aggravated assault and the accused was convicted of the lesser charge. It was held that although the testimony showed a rape upon a child, nevertheless, the accused could not complain because the facts showed a greater offense than the one for which a conviction is had, both offenses being based on an assault.

It has been held in a long line of cases set forth in Gray v. State, 61 Tex. Cr. R. 454, 135 S. W. 1179, as follows:

"In other words, there is no constitutional inhibition against using what is ordinarily denominated murder evidence to convict one of manslaughter."

In Gray's case, supra, it is made clear that where the testimony showed a killing with malice, nevertheless, a manslaughter conviction will be upheld under such state of proof. See also Jabalie v. State, 128 Tex. Cr. R. 412, 81 S. W. (2) 509; Gatlin v. State, 86 Tex. Cr. R. 339, 217 S. W. 698; High v. State, supra.

A case of early impression is that of Pickett v. State, 43 Tex. Cr. R. 1, 63 S. W. 325, in which Judge Davidson had the following to say:

"Let us look at it from another angle of view. Suppose, under an indictment charging murder, the State elects to try the accused only for manslaughter, dismissing the prosecution as to murder, and, on the trial, there is testimony which would authorize a conviction for murder in either degree or manslaughter. Now, if appellant's theory is correct, and his contention sound, the court would be required to instruct the jury, if they believed the evidence of murder they should acquit of manslaughter. If this position is the correct one, then, in all cases involving grades of offense, as in homicide, there should be evidence of a higher grade than that upon which the conviction is sought, defendant would be entitled to an acquittal, by reason of that evidence, however, full and strong the testimony might be with reference to the grade for which he is being tried. It is not necessary to discuss this question. The court was correct in refusing the requested instructions, and did not err in submitting alone the issue of manslaughter. Appellant had been acquitted of murder, and could not use that acquittal as a bar to the prosecution for manslaughter. Scroggins v. State, 32 Texas Crim. Rep. 71."

The matter at issue in this cause is the killing of Billy Joe Ward, the first count in the indictment alleging a killing with malice, and the second count, a killing while drunk, by accident or mistake, both offenses being of the same nature. In either event, the same act is upon trial before the jury, and we think appellant cannot avail himself of the defense of having killed this boy with malice, when convicted, as in this instance, of having killed his victim by accident or mistake, while driving when drunk.

Believing that no error is shown herein, the judgment is affirmed.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing, among other things, appellant insists that we were in error in holding in effect that a killing by mistake and accident as charged in the second count in the indictment was an included offense as that charged in the first count, viz: an intentional killing upon malice aforethought. After reconsidering the matter, we have concluded that such portion of our original opinion as might be construed as holding the offense charged in the second count was included in that charged in the first count should be withdrawn. However, we remain of opinion that under the facts we can not say the jury was without evidence to support the finding of guilt under the count submitted by the trial judge.

Other matters urged in the motion we think were properly disposed of in our original opinion.

The motion for rehearing is overruled.