CHARLES SPRAGLIN v. STATE

No. 31,181. March 16, 1960

Motion for Rehearing Overruled May 11, 1960

DAVIDSON, Judge, dissented.

*Florence, Garrison & Holt,* by *F. L. Garrison,* Gilmer, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge

The offense is murder without malice under Article 802c V.A.C.C.P.; the punishment, five years.

Four boys were playing soft ball in the front yard of the home of one of the boys. The boy with the bat hit the ball too hard, and it went out in the road. One boy followed the ball and was hit by an automobile driven by the appellant, who was intoxicated. Though not within the city limits, the locality was residential.

The most difficult question presented is whether or not a causal connection is shown between appellant's intoxication and the accident.

The correct rule is found in the following quotation from Long v. State, 154 Tex. Cr. R. 587, 229 S.W. 2d 366, 369:

"Having driven his automobile upon the highway while intoxicated, as found by the jury, appellant was bound under the law to drive such car regardless of the conditions of the highway, the car or the weather, in the same prudent manner as though he was entirely sober.

"If the collision resulted from the wet, slippery or icy pavement, the falling or fallen snow, the faulty condition of the wind-

shield wiper, or even by reason of the loss of control under the conditions submitted as appellant's defense, yet, if such collision could have been avoided under those circumstances if appellant had been sober rather than intoxicated, then a causal connection is established between the intoxication and the collision and the resulting death.

"Such is the effect of the court's charge to the jury. A finding is required that the collision was an accident such as could have been avoided except for the intoxicated condition of the driver."

Applying the rule stated to the facts before us, appellant having driven upon the highway while intoxicated, as found by the jury, was bound under the law to drive such car regardless of the conditions in the same prudent manner as though he was entirely sober, and if the accident resulted from the boy running into the path of the automobile he was driving, if it could have been avoided under those circumstances if appellant had been sober rather than intoxicated, then a causal connection is established between the intoxication and the accident and resulting death.

The jury having found that appellant's intoxication "caused or substantially contributed to cause" the accident, this court must view the evidence in the light most favorable to the state in disposing of the above issue. Greiner v. State, 157 Tex. Cr. R. 479, 249 S.W. 2d 601, 604, and cases cited.

Miller, a 29 year old employee of Lone Star Steel Company, happened to be passing in his automobile, traveling from west to east. He saw the boys playing south of the highway, saw the ball pass immediately back of his autombile, and saw the deceased pursuing it. At this moment, he saw the automobile traveling from east to west, which was later shown to have been driven by appellant, 200 feet ahead and approaching him. Through his rear view mirror, Miller saw appellant's automobile strike the child and knock him into the air. The boy was dead when his body came to rest more than a hundred feet away. No skid marks were found on the highway, and the other witnesses said they heard no sound and saw no indication that appellant applied his brakes. In fact, in his testimony, appellant does not claim that he applied his brakes.

Appellant gave several versions of the accident. He repeated-

ly testified that the child was crossing the road from north to south. All of the evidence, save his testimony, was to the effect that the boys were playing ball in the yard south of the highway and that in chasing the ball across the highway the deceased crossed from south to north.

Appellant testified that he could not see the child before he struck him; that when he first saw him the child was up in the air; he also testified that the boy ran across about 8 feet in front of him and when he saw the boy he tried to miss him and pulled to the right; also that before he hit the child he could not see it and: "Q. Was the car between you and it? A. Yes, sir."

On cross-examination appellant testified that when he saw the boy "he was right in the highway running out in the road from the right." "Q. Was there any car obstructing your view? A. There was a car in front of me. I was trailing a car, behind him, about 20 yards behind him; "Q. All right now, you didn't see the child until it was hit? A. No, sir, I didn't."

Appellant later, on cross-examination, testified that he pulled to the right after "the boy ran out in the road and I had struck him.

"Q. He was eight steps in front of you? A. About eight.

"Q. And he was coming from the right and you pulled to the right in the direction he was coming from? A. *I will tell you the truth, I just don't know exactly which * * * .*

"Q. *You don't know whch way he was coming from do you?* A. *No, sir, I don't.*"

On re-direct examination appellant further testified:

"Q. Charles, were you frightened at that time? A. Yes, sir, I was.

"Q. *Do you know just exactly how the matter happened out there?* A. *No, sir, I don't * * * .*

"Q. *Do you remember meeting a car out there anywhere, Charles?* A. *No, sir, I don't.*

"Q. You don't remember meeting a car? A. No, sir."

Other evidence in the case was that appellant, after striking the child, drove on to the shoulder of the highway and speeded up, and did not stop until he was some half mile away.

Appellant's written statement was introduced in evidence in which he said "When I stopped I tried to get Mason to drive the car but he wouldn't do it."

The third occupant of the car testified: "Q. Was Mason drunk at the time this collision occurred? A. He sure was."

This witness also testifed that the car was going straight ahead and had not turned to left or right before the boy was struck.

In its final analysis, appellant's testimony was that he did not know what happened other than that the automobile he was driving struck a child he did not see and hence made no effort to avoid striking. He not only did not see the child but did not remember meeting the autombile traveling in the opposite direction, which it is contended obstructed his view. If, as he testified, there was another automobile 20 yards ahead of appellant traveling in the same direction it could not have obstructed his view of the boy as he ran from the south side of the highway.

Appellant's intoxicated condition could hardly be eliminated as a cause for appellant's failure to see the child before striking him, and to properly judge the direction the child was moving and the distance. Had he veered to the left or slackened his speed at the time he should have seen the child, the accident could have been avoided.

We have concluded that the jury was authorized to find that had appellant been sober he could have avoided striking the child.

Having concluded that the evidence is sufficient to support the conviction, we address ourselves to a discussion of some of appellant's other contentions. He first asserts that the court erred in failing to submit to the jury his affirmative defense that the deceased child ran into the right front fender of his automobile. He bases his contention upon isolated questions and anwers adduced during the cross-examination of two of the boys who were playing ball. They both testified that the deceased ran

out into the highway chasing the ball and got almost across before he "got hit." While it is true that on cross-examination they answered in the affirmative when being asked if the deceased had run into the right front fender of the car as he was running after the ball and even that it was the right side of the car which he had run into, we cannot bring ourselves to conclude that there was any evidence that would have supported a defensive theory that the deceased had crossed the highway, turned around and ran back into the right side of appellant's automobile. All the testimony focused the point of impact at the right front fender and hood and indicated that the deceased was almost across the road when he was hit. It is obvious from their entire testimony that the witnesses were relating the fact that the deceased was nearly at the edge of the pavement when he was hit by the right fender of appellant's automobile, which was traveling in the far lane of traffic.

Appellant's next complaint relates to the refusal of the court to permit appellant's witness Lawton, his companion on the day in question, to testify that appellant was driving in a cautious manner and just as a man who had not been drinking. Prior to such questions being propounded, Lawton had testified that appellant was driving at 40 miles per hour and in his proper lane of traffic. The state's objections that such questions called for a conclusion of the witness were sustained.

We adopt the words of Judge Davidson in Williams v. State, 54 Tex. Cr. R. 642, 114 S.W. 802, when, in speaking of a similar question, he said: "We are of opinion that the rejection of the testimony, if error, is not of sufficient importance to require a reversal of the judgment."

Appellant's last complaint is addressed to that portion of the testimony of Officer Walker in which he said that highway patrolmen often smell liquor on people's breath, conclude that they are not intoxicated and file no charges. The objection was only that the question was leading, suggestive and in contradiction to his prior testimony. If error, it is not ground for reversal.

Finding no reversible error, the judgment of the trial court is affirmed.

DAVIDSON, Judge, (dissenting).

I am convinced that the undisputed facts show that deceased came to his death as the result of an unavoidable accident,

brought about by his chasing a ball across a paved highway and into the path of the oncoming automobile driven by appellant.

I am also convinced that in affirming this conviction my brethren have done so upon the erroneous theory that appellant was guilty of negligent homicide.

Here are the undisputed facts as I see them:

The accident occurred upon a paved highway sixty feet in width and running in an east-west direction. The witness Williams lived on the north side of the highway. On that Sunday afternoon the deceased, an eight-and-a-half-year-old white boy, went with his parents to the Williams' home. There he met three other boys about his age. They decided to play soft ball and went across the highway to the yard of Jimmie Rider, one of the boys, and soon started playing soft ball near the highway.

Rider hit the ball towards the highway, and the deceased chased it. At that time an automobile driven by the witness Miller and traveling east along the south side of the highway— which was on the side nearest where the boys were playing— was passing. At the same time, appellant's car, traveling west on the north side, was approaching. The ball was knocked onto the highway and to the rear of the passing Miller car and in front of the oncoming car driven by appellant. As the deceased still chased and pursued the ball, he ran in front of appellant's automobile and as he reached the opposite or north side of the highway he was struck by the right side of appellant's car, his body being hurled something over a hundred feet.

The witness Don Floyd, one of the boys participating in the ballgame, gave what I consider the most comprehensive description of what happened, when he testified as follows:

"(Q And as the ball left the bat and started out across the road what did the McCollum (deceased) boy do?) A He started after it.

"(Q He started running after the ball, is that right?) A Yes, sir.

"(Q Did he run straight across the road as the ball was going across the road?) A Yes, sir.

"(Q *Right after the ball?*) A. *Yes, sir.*

"(Q And *did he run right in front of this car?*) A *Yes, sir.*

"(Q Ran right in front of the car?) A Yes, sir.

"(Q How far would you say, Don, the boy was from the front of the car at the time he ran into the road, right at it?) A No, sir, he wasn't right at it.

"(Q Well, *four or five feet?*) A Well, it might have been that far.

"(Q He might have been that far, is that right?) A Yes, sir.

"(Q That accident excited you didn't it Don?) A Yes, sir.

"(Q You don't now recall hearing any brakes screeking or anything else?) A No, sir.

"(Q Well, could it have done that and you not have noticed it due to the excitement?) A I don't think· so.

"Q You don't believe so?) A No, sir.

"(Q Well, almost instantly after the McCollum boy ran into the road following the ball, you say he ran right in front of this car?) A Yes, sir.

"(Q He was struck immediately after he entered the road wasn't he?) A *He nearly made it across to the other side of the road.*

"(Q Sir?) A He nearly made it across to the other side.

"(Q But didn't make it?) A No, sir.

\* \* \* \* \* \*

"Q Was there a hedge there somewhere?) A Yes, sir.

"Q. *And where was the hedge located with reference to where this child ran out into the road and across the road following the ball?*) A *It was located out there pretty close to where he ran out.*

"(Q In other words, there was a hedge there and he was pretty close to the hedge at the time he ran out into the road in front of this car after the ball?) A Yes, sir."

The undisputed evidence showed that appellant was driving his automobile at the time at a rate of speed of about fifty miles per hour. One witness placed the rate of speed at forty miles per hour. No witness placed the rate of speed of appellant's car at more than fifty miles per hour.

The maximum rate of speed of sixty miles per hour over state highways applied to this highway.

There were no skid marks indicating that appellant applied the brakes on his car before striking the deceased. The evidence shows that appellant's car was traveling straight down the highway when the deceased was struck and that after striking him and as a result of the impact or appellant's effort to avoid striking him the car ran off the side of the pavement.

The state introduced appellant's written confession in evidence, which confession contained the statement:

"I was driving the car and as—were going out the Mt. Pleasant highway a child ran out in front of me just before I got to Cecil Miller's store and I hit him with the car."

The state's evidence was sufficient to show that appellant was under the influence of intoxicating liquor.

Testifying as a witness, appellant admitted having drunk some intoxicants earlier in the day but denied that he was under the influence thereof. His entire defense was that the deceased suddenly ran in front of his automobile and that he was powerless to prevent the collision, although he tried to avoid striking the child. Appellant was, at that time, a twenty-six-year-old Negro man.

Several witnesses attested appellant's good reputation as a peaceable and law-abiding citizen.

The state offered no evidence contradicting that reputation.

The insufficiency of the evidence to support the conviction lies in the fact that there is absolutely no causal connection

between the accidental striking of the deceased and appellant's alleged intoxication.

The rule is well-established that in cases of this nature it is not enough that the accused is intoxicated while driving his car, but that such intoxicated driving must cause the death of the other party.

In submitting this case to the jury, the learned trial judge correctly recognized the rule mentioned when he instructed the jury that the appellant would not be guilty if he was operating the automobile in such manner as it would have been operated by one not under the influence of intoxicating liquor and that the jury could not convict appellant unless they believed that his intoxication caused the accident. Among authorities attesting the rule stated are the following: Norman v. State, 121 Tex. Cr. R. 433, 52 S.W. 2d 1051; Burton v. State, 122 Tex. Cr. R. 363, 55 S. W. 2d 813; Jones v. State, 127 Tex. Cr. R. 227, 75 S. W. 2d 683; Collins v. State, 130 Tex. Cr. R. 386, 94 S. W. 2d 443; Totten v. State, 134 Tex. Cr. R. 62, 113 S. W. 2d 194; Johnson v. State, 153 Tex. Cr. R. 59, 216 S. W. 2d 573; and Greiner v. State, 157 Tex. Cr. R. 479, 249 S. W. 2d 601.

In order to sustain a conviction under Art. 802c, Vernon's P. C., the state must prove the following essential elements: (a) the driving of a motor vehicle by the accused upon a public highway, (b) the intoxication of that driver, (c) the accidental or mistaken commission by the intoxicated driver of another act than the mere act of driving the automobile which struck and caused the death of the deceased, and (d) the other act, committed by accident or mistake, being caused by the intoxication of the driver.

Such is made manifest by what this court said in Long v. State, 152 Tex. Cr. R. 356, 214 S.W. 2d 303:

"Intoxication at the time and proof by the State, or finding by the jury under the Court's instruction, that there was a death will not in that abstract form support a conviction. The death must be the result of the intoxication and proof must be made and submitted to the jury of that thing which worked a causal connection between the intoxication and the death."

There is not the least suggestion in the evidence in this case that the death of the deceased would not have occurred just

as it did had appellant been cold sober at the time and wholly and entirely without any degree of intoxication.

Such being true, the state has not shown that appellant's intoxication caused or brought about the death of the deceased.

My brethren affirm this conviction not upon a finding that the death of the deceased was caused by accident or by a mistaken act of the appellant, as expressly provided by Art. 802c, Vernon's P. C., but that the cause of death was occasioned by the passive negligence of the appellant in failing to keep a proper lookout by which he would have seen the deceased before striking him, and by failing to avoid striking him because of not veering to the left or slackening the speed of the automobile at the time "he should have seen the child," and by not being sober when driving the automobile at the time and thus avoiding striking him. In other words, according to the majority opinion appellant's intoxication was an act of negligence that caused the death of the deceased.

I call attention to the fact that over twenty-five years ago, when prosecutions of this nature first came before this court, it was held that negligence or negligent acts of the accused could be no part of or enter into an offense such as here charged. Jones v. State, 127 Tex. Cr. R. 227, 75 S. W. 2d 683. The very thing which my brethren are here writing into the law—that is, that the instant conviction is authorized upon active or passive negligence—was there rejected and has been rejected at all times since then until the affirmance of this case.

The reasoning behind the Jones case was adopted and made applicable to prosecutions under Art. 802c, Vernon's P. C., in Johnson v. State, 153 Tex. Cr. R. 59, 216 S. W. 2d 573.

The statute (Art. 802c) expressly by its terms excludes the idea of negligence on the part of the accused as an element thereof. The statute reads as follows:

"Punishment of intoxicated driver involved in accident or doing act otherwise felonious.

"Any person who drives or operates an automobile or any other motor vehicle upon any public road or highway in this State, or upon any street or alley or any other place within the limits of an incorporated city, town or village, while such person

is intoxicated or under the influence of intoxicating liquor, and while so driving and operating such automobile or other motor vehicle shall through accident or mistake do another act which if voluntarily done would be a felony, shall receive the punishment affixed to the felony actually committed."

Every act necessary to be done to violate that statute is and must be a positive act as distinguished from a negative act or failure to act. The driving of an automobile and the intoxication of the driver must be shown and, in addition, the doing of an act other than that of driving while intoxicated must be shown before that statute is shown to have been violated.

Thus acts of passing negligence—such as failure to keep a lookout, faliure to veer or turn or stop, or failure to avoid the accident could never be construed as coming within or as being a part of Art. 802c, Vernon's P. C.

If this appellant is to be convicted of negligent homicide, as I contend my brethren have here done, he ought to be indicted and tried for that offense.

The indictment in this case did not charge appellant with negligent homicide. Nowhere in the court's charge was the question of appellant's negligence submitted to the jury, nor were the jury required or authorized to determine his guilt because of acts of negligence on his part, especially those upon which my brethren affirm this case. Indeed, when this appellant receives the opinion in this case that will be the first time that either he or his counsel will have had notice that he was being tried for failing to keep a lookout, failing to stop, failing to veer, or failng to avoid the collision.

It must be remembered, also, that the offense of negligent homicide is a misdemeanor, and a term in the penitentiary can not be assessed for such violation of the law. Yet, here, appellant goes to the penitentiary for five year for negligent homicide in causing the death of the deceased.

Regardless of all things else, there remains one fact situation that precludes an affirmance of this conviction: I refer to the fact that for appellant to be guilty he must, in addition to driving the automobile while intoxicated, accidentally "do another act" which if he had not done accidentally, but intentionally, would have rendered him guilty of murder without malice.

The crime of murder—that is, an intentional or voluntary killing —can not rest upon negligence. Such is the reason for the statute on negligent homicide.

This record will be searched in vain for any evidence which shows the doing of any other act, either accidentally or intentionally. The failure to act could hardly be construed as the doing of a positive act.

Art. 802c, Vernon's P. C., is no part of the law of homicide in this state. The provisions thereof may be applied to the crime of arson, assault with intent to murder, and to any and all other felonies which may be committed by the driving and operation of a motor vehicle upon the public highways of this state. It is a special statute which denounces as a crime and makes unlawful only the acts expressly prohibited thereby.

The sole purpose and effect of Art. 802c is to punish one who, while intoxicated, drives an automobile upon a public highway and by the doing of another act accidentally or by mistake kills another person. Then the death of the deceased must be the result of an accident or mistake. It can not result from either negligence or an intended act.

As demonstrating the correctness of that conclusion, it should be necessary to call attention only to the fact that if one, intoxicated or sober while driving an automobile, voluntarily— that is, intentionally kills another person he is guilty of murder. Cockrell v. State, 135 Tex. Cr. R. 218, 117 S.W. 2d 1105. He is not guilty of violating Art. 802c.

Proof that the death of the deceased was caused by accident or mistake under such circumstances would constitute a complete defense, because no act done by accident or mistake is an offense except in certain cases specially provided for where there has been a degree of carelessness or negligence which the law regards as criminal. Art. 39, P. C.

It is plain, therefore, that the purpose and intent of Art. 802c, Vernon's P. C., is to punish one for his accidental acts committed while driving intoxicated, and to deprive him of the right given by Art. 39, P. C., under which no act done by accident could be punished as a crime. Under Art. 802c, the act which causes the death of the person must be done by accident

or mistake. Such is imperative. Without such proof, Art. 802c has not been shown to be violated.

The intoxication of the driver is descriptive of the individual to whom the statute applies. It is the fact of intoxication which takes away the right to insist, as a defense, that the act causing death was an accident or mistake. Generally, intoxication can not be a defense to crime. Art. 36, Vernon's P. C.

To me it is clear—and I have endeavored to so demonstrate —that a violation of Art. 802c, Vernon's P. C., can not occur without proof that the accused, accidentally or by mistake, did an act, other than and in addition to the driving of a motor vehicle while intoxicated, which caused the death of the deceased but for which other and additional act the death of the deceased would not have occurred.

There is an utter absence, here of proof of such act.

My brethren suggest that appellant was intoxicated to the extent that he was precluded from preventing the accident and that his intoxication was the cause of his failure to see the child and to judge the direction in which the child was moving and the distance he was from the automobile.

What does the record show to be the extent of appellant's intoxication at the time? In the first place, the sheriff of the county, arriving at the scene of the accident and taking appellant into custody, not only permitted but directed appellant to drive the automobile from the scene of the accident to the county jail at Dangerfield. On arriving, appellant was placed in jail.

Appellant readily consented to the taking of a blood test. His blood was subsequently analyzed for alcoholic content by a chemist for the Department of Public Safety, who testified as follows:

"I made a determination of the alcohol present in this specimen by distilling off the alcohol from the major quantity of the blood and found the alcoholic concentrate in this particular specimen to be 0.21 per cent alcohol by weight.

The witness further testified that one was considered intoxicated who had a blood concentrate of alcohol 0.15 per cent. In other words, from a scientific standpoint appellant's intoxi-

cation was 0.06 per cent in excess of normal. If appellant had been intoxicated very much it is hard to believe that the sheriff would have directed him to drive the automobile before the blood sample was taken. The fact that the sheriff did so direct suggests that appellant was not intoxicated to the point that he did not have the normal use of his faculties.

If this appellant is criminally responsible for the death of the child he richly deserves the punishment which the jury decided upon. On the other hand, if appellant was not criminally liable for the child's death or if he has not been tried and convicted in accordance with law he ought not to be required to serve that sentence. There is no middle ground. There is no place, here, for extenuating circumstances.

Having concluded from the record before me that the deceased did not come to his death as the result of the criminal act or agency of the appellant and that appellant has not been tried and convicted in accordance with law, it is my duty to say so. This duty I have performed.

I dissent.