**Wanda Watson REPKA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 42830.**

Court of Criminal Appeals of Texas.

May 13, 1970.

Rehearing Denied July 8, 1970.

Grady Hight, Fort Worth, for appellant.

Frank Coffey, Dist. Atty., Truman Power, Roland H. Hill, Joe C. Spurlock II and William A. Knapp, Asst. Dist. Attys., Fort Worth, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

WOODLEY, Presiding Judge.

Appellant entered a plea of not guilty to an indictment charging her with murder without malice (Art. 802c Vernon's Ann. P.C.) and filed application for probation. The jury found her guilty and assessed her punishment at two years in the penitentiary.

The indictment alleged that appellant did unlawfully while intoxicated and while under the influence of intoxicating liquor drive an automobile on a public highway of this state, and in the execution of said unlawful act, through mistake and accident, kill Marian Elise McKee by then and there driving said automobile off of the main traveled portion of said highway and into and causing it to collide with a house occupied by the said Marian Elise McKee.

The state's evidence reflects that appellant was the driver of an automobile that was being operated on Green River Trail, a public street in Ft. Worth, at about 2 A.M., when the automobile crashed into the house of Dr. Richard McKee, who resided at 801 Green River Trail, and crushed the body of his two and a half year old daughter, Marian Elise McKee, who was in her bed in that portion of the house which the automobile crashed into.

Dr. McKee, a medical doctor, pronounced his daughter dead at the scene. Cause of death was shown to be "a massive crushing injury to her brain."

Police Officer Steve Moody, who was a block away, heard what sounded like a car moving at a high rate of speed and then heard a "crumpling sound" and went to investigate. When he arrived he found appellant sitting behind the steering wheel of a Cadillac automobile that had crashed into the house.

Officer Moody testified that upon talking to appellant he smelled alcohol on her breath, and later took her to the hospital where a sample of blood was drawn for the purpose of testing its alcoholic content. He further testified that appellant was staggering and was unable to walk a straight line, and expressed the opinion that she was intoxicated.

Chemical analysis of the blood sample revealed a concentration of .24 per cent alcohol by weight, and the opinion of an expert witness was that any person with that concentration of alcohol in his blood would be intoxicated.

Appellant's brief first complains that the evidence is insufficient to show that the intoxication of the defendant caused or contributed to the cause of the accident, and directs attention to the testimony of Lee Bollinger, a defense witness, that the car driven by appellant was owned by the company of which he was president and appellant's husband was a partner. He testified that he had driven it a few days before and had discovered a broken motor mount that caused raw gas to spill into the carburetor. Before he could fix the car, appellant's husband took it from the lot for his wife to drive. He examined the car after the accident. He testified that the gas spilling difficulty would cause the engine first to race and then to choke and die and when the engine died there would be no power steering or brakes. The witness testified: "It wouldn't happen each time it's driven, no," and that when he drove it to check it—"We could make it do it, yes."

Appellant testified in part:

"Q. * * * What did you do when you got in the car?

"A. I started the car as usual. It was a cool night or cold night and I sat there and let the car warm a bit with my foot on the accelerator, gunning it.

"Q. Was this for the purpose of warming it up?

"A. Yes.

"Q. All right. What did you do then?

"A. I backed out of the driveway and started up Green River Trail for the expressway, or the tollroad.

"Q. What happened then?

"A. I hadn't gone very long, very far, 'til I hit the curb on the right-hand side of the street.

"Q. All right. Do you know what caused you to hit the curb?

"A. No, I don't.

"Q. What happened to the car after it hit the curb on the right side of the street?

"A. It started in the direction of the left curb.

"Q. What did you do?

"A. Well, I immediately hit my brakes and I tried to right the car, right it in the right direction.

"Q. By the use of the steering wheel?

"A. Yes, yes.

"Q. Did it respond?

"A. No, it did not.

"Q. What did the car do then?

"A. The car continued going toward the left curb, and did not stop until it hit the home of Dr. and Mrs. McKee.

"Q. After it bounced over the curb while it was on the grass did you continue trying to turn it?

"A. Yes, I did.

\* \* \* \* \* \*

"Q. After the car came to a stop what did you do?

"A. I sat there for a minute and then I put the—

"Q. What was your state of mind if you could describe it?

"A. I was confused. I was dazed, but I put the the car in reverse and tried to pull it out of the house.

"Q. Did it move?

"A. It did not move.

\* \* \* \* \* \*

"Q. Wanda, do you have any idea why the car ran into the curb?

"A. No, I do not. I have asked myself many times."

The rule applicable is stated in Long v. State, 154 Tex.Cr.R. 587, 229 S.W.2d 366, 369, and quoted with approval in Spraglin v. State, 169 Tex.Cr.R. 470, 334 S.W.2d 798, 799:

" 'Having driven his automobile upon the highway while intoxicated, as found by the jury, appellant was bound under the law to drive such car regardless of the conditions of the highway, the car or the weather, in the same prudent manner as though he was entirely sober.

" 'If the collision resulted from the wet, slippery or icy pavement, the falling or fallen snow, the faulty condition of the windshield wiper, or even by reason of the loss of control under the conditions submitted as appellant's defense, yet, if such collision could have been avoided under those circumstances if appellant had been sober rather than intoxicated, then a causal connection is established between the intoxication and the collision and the resulting death.

" 'Such is the effect of the court's charge to the jury. A finding is required that the collision was an accident such as could have been avoided except for the intoxicated condition of the driver.' "

■ The contention that the testimony relating to mechanical malfunction rendered the evidence insufficient to sustain the jury's verdict or the conviction is overruled. See Thomason v. State, Tex.Cr. App., 388 S.W.2d 700; Clayton v. State, 172 Tex.Cr.R. 595, 361 S.W.2d 385.

Other complaints set forth in appellant's brief have been examined. Assuming that the complaints may be considered as grounds of error which comply with Art. 40.09(9) Vernon's Ann.C.C.P., none of them reflects reversible error.

■ We will discuss only the complaint that counsel for the state, during his argument at the hearing on punishment, was allowed over proper objection to show that appellant was a person of considerable means who had hired a prominent lawyer and "should be treated differently than a man in shabby clothing with a court appointed lawyer," and to argue that probation for this woman would result in a double standard in law enforcement, that the community would have less respect for law enforcement "leading to moral decline and over protection for all law breakers."

The record does not support the contention that the complained of remarks were to the effect that appellant should be treated differently than a man in shabby clothing with a court appointed lawyer. To the contrary, counsel for the state was pleading that appellant should *not* be treated differently.

No reversible error appearing, the judgment is affirmed.